**CINE FORTY–SECOND STREET THEATRE CORP., Plaintiff-Appellee,**

**v.**

**ALLIED ARTISTS PICTURES CORP., American International Pictures, Inc., Columbia Pictures Industries, Inc., Twentieth Century-Fox Film Corp., Warner Bros. Distributing Corp., Cinema Circuit Corp., Harry Brandt Booking Office, Inc., Judlo, Inc., Steftom, Inc. and the Forty-Second Street Co., Defendants-Appellants.**

**No. 1040, Docket 79–7121.**

United States Court of Appeals, Second Circuit.

Argued June 8, 1979.

Decided June 28, 1979.

---

Robert G. Sugarman, New York City (Henry J. Tashman, Amy L. Katz, Weil, Gotshal & Manges, Lawrence N. Weiss, Weisman, Celler, Spett, Modlin & Wertheimer, William Gold, New York City, of counsel), for defendants-appellants.

Alfred S. Julien, New York City (Stuart A. Schlesinger, Martin S. Rothman, Julien, Schlesinger & Finz, New York City, of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and OAKES and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge.

The *Federal Rules of Civil Procedure* carried the discovery principles of Equity into the nation's courts of law in the hope of expediting the litigation process and of transforming the sporting trial-by-surprise into a more reasoned search for truth.[1] On their face, the Rules deal harshly with the recusant deponent and the dilatory answeror. Courts have been reluctant, however,

---

1. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *Hickman v. Taylor,* 329 U.S. 495, 500–01, 67 S.Ct. 385, 91 L.Ed. 451 (1947); P. Connolly, E. Holleman & M. Kuhlman, *Judicial Controls and the Civil Litigative Process: Discovery* (1979).

to impose the full range of sanctions available under Rule 37. Preclusion of testimony and dismissal are, to be sure, extreme sanctions, to be deployed only in rare situations. But unless Rule 37 is perceived as a credible deterrent rather than a "paper tiger," Rosenberg, *New Philosophy of Sanctions,* in *Federal Discovery Rules Sourcebook* 141 (W. Treadwell ed. 1972), the pretrial quagmire threatens to engulf the entire litigative process.[2]

A panel of this court has accepted certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) which raises the following question: where a party, fully able to comply with a magistrate's order compelling discovery fails to do so due to a total dereliction of professional responsibility, amounting to gross negligence, may the district court in its discretion order a preclusion of evidence tantamount to the dismissal of a claim under Fed.R.Civ.P. 37? We conclude that it may.

## I

Appellee Cine Forty-Second Street Theatre Corp. ("Cine"), has operated a movie theater in New York City's Times Square area since July 1974. It alleges that those owning neighboring theaters on West Forty-Second Street (the "exhibitors")[3] attempted through abuse of City agency processes to prevent the opening of its theater. When this tactic was unsuccessful, Cine contends, the exhibitors entered into a conspiracy with certain motion picture distributors[4] to cut off its access to first-run, quality films. Bringing suit on August 1, 1975, Cine claimed $3,000,000 in treble damages under the antitrust laws, and sought an injunction against the defendants' alleged anticompetitive practices.

On November 6, 1975, the eleven defendants served plaintiff with a set of consolidated interrogatories. Cine thereupon secured its adversaries' consent to defer discovery on the crucial issue of damages until it could retain an expert to review the rival exhibitors' box office receipts. Not until four months after the deadline upon which the parties had agreed, however, did Cine file its first set of answers to the remaining interrogatories. Moreover, even casual scrutiny reveals the patent inadequacy of these responses. Many were bare, ambiguous cross-references to general answers elsewhere in the responses. Highly specific questions concerning the design of Cine's theater were answered with architectural drawings that did not even purport to show the dimensions requested.

Although Cine now complains bitterly that these interrogatories amounted to pure harassment, it never moved to strike them as irrelevant or as harassing. Rather, it filed supplemental answers, which were similarly deficient, and then failed to obey two subsequent orders from Magistrate Gershon compelling discovery. At a hearing in October of 1977, the magistrate found Cine's disobedience to have been willful, and assessed $500 in costs against it. Soon afterwards, she further warned plaintiff that any further noncompliance would result in dismissal.

By the summer of 1977, as this conflict was coming to a head, Cine had still not retained the expert it claimed was necessary to respond to the damages interrogatories. Magistrate Gershon quite reasonably and leniently ordered Cine merely to produce a plan to answer, but this yielded no result. The magistrate then directed Cine to answer the damages interrogatories, ad-

---

2. Erickson, *The Pound Conference Recommendations: A Blueprint for the Justice System in the Twenty-First Century,* 76 F.R.D. 277, 288 (1977); American Bar Association, *Report of Pound Conference Follow-Up Task Force,* 74 F.R.D. 159, 192 (1976).

3. These are Cinema Circuit Corp., Germar, Inc., Judlo, Inc., Steftom, Inc., and The Forty-Second Street Co. Another defendant in this category, Harry Brandt Booking Office, Inc., does not own any theaters, but was alleged to be the booking agent for some of the films and theaters in question.

4. Allied Artists Pictures Corp., American International Pictures Industries, Inc., Columbia Pictures Industries, Inc., Twentieth Century-Fox Film Corp., and Warner Bros. Distributing Corp.

monishing its counsel that future nonfeasance would be viewed in light of past derelictions. Cine did file two sets of answers, one over two months late and both seriously deficient.

The responses omitted, *inter alia,* any information concerning significant time periods for which Cine claimed injury. Moreover, they failed to provide any indication as to the method of calculating a major portion of the alleged damages. Thereupon, at an unrecorded hearing held on September 7, 1978, Magistrate Gershon, once again held off the imposition of final sanctions in these already over-protracted discovery proceedings and ordered the defects cured, on pain of dismissal of the complaint. Cine stood mute, neither appealing from, objecting to, nor complying with the order. On September 20, the defendants moved before the magistrate for dismissal of the complaint, citing plaintiff's failure to obey the order requiring responses on damages.

At a formal hearing on October 19, 1978, Cine's attorney argued that several months earlier he and defense counsel had reached an "understanding," pursuant to which a deposition of Cine's principal officer, Clark, would replace the answers at issue. Cine has never introduced any written evidence or corroborative testimony demonstrating the existence of such an understanding. In any case, the magistrate's subsequent oral order compelling answers to the interrogatories would have superseded it.

Accordingly, Magistrate Gershon found that Cine had no basis for assuming that the answers were not due on the dates set in her orders. After noting plaintiff's history of disobedience in the face of her own repeated warnings, the magistrate concluded that Cine's present non-compliance was willful.[5] "[T]he plaintiff," she stated, "has decided when it will be cooperative and when it will not be cooperative, and that it does not have any right to do." She thereupon recommended to the district court that Cine be precluded from introducing evidence with respect to damages. This sanction was, of course, tantamount to a dismissal of Cine's damage claim, but left standing its claim for injunctive relief.

Judge Goettel, the district judge to whom Magistrate Gershon's order was submitted for approval, reacted to Cine's behavior as did Magistrate Gershon. He wrote, "[i]f there were ever a case in which drastic sanctions were justified, this is it." But Judge Goettel could not fully accept the magistrate's finding of willfulness. "[T]he actions of plaintiff's counsel," he concluded,

> were either wilful *or* a total dereliction of professional responsibility. No other conclusion is possible. However, in the absence of a written direction, it is virtually impossible to establish that the attorney's action was in fact wilful, rather than grossly negligent.

The district judge thus apparently believed it possible that Cine's counsel, confused as to the precise terms of Magistrate Gershon's oral orders, could have thought in good faith that the answers were not due. Action taken upon that baseless belief, however, was, at the very least, grossly negligent. The district court "regretfully" concluded that under *Flaks v. Koegel,* 504 F.2d 702 (2d Cir. 1974), it lacked the power, absent a finding of willfulness, to impose the extreme sanction recommended by the magistrate. Instead, the court merely assessed costs in the amount of $1,000.[6] But, recognizing that he might have "misperceive[d] the controlling law of this circuit," Judge Goettel certified this interlocutory appeal on his own motion under 28 U.S.C. § 1292(b).

---

**5.** In light of our holding, it is not necessary for us to consider Cine's contention that a written order is, as a matter of law, a necessary prerequisite to a finding of "willfulness" under Rule 37. We note, *en passant,* however, that in *Independent Investors Protective League v. Touche Ross & Co.,* 25 F.R.Serv.2d 222, 224 (1978) and *Henry v. Sneiders,* 490 F.2d 315, 318 (9th Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974), preclusion was upheld on the basis of orders announced in open court.

**6.** Defendants estimate that their actual costs in seeking to compel discovery total at least $50,-000.

On reargument, Judge Goettel expressed some doubt regarding the correctness of his prior decision. In light of plaintiff's subsequent response to the damages interrogatories, however, the court adhered to its earlier view.[7]

## II

The question before us is whether a grossly negligent failure to obey an order compelling discovery may justify the severest disciplinary measures available under Fed.R.Civ.P. 37. This rule provides a spectrum of sanctions.[8] The mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent are orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party. Harshest of all are orders of dismissal and default judgment.

■ These sanctions serve a threefold purpose. Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. *Dellums v. Powell,* 184 U.S.App.D.C. 339, 566 F.2d 231 (1977). Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. *Robison v. Transamerica Ins. Co.,* 368 F.2d 37 (10th Cir. 1966). Finally, although the most drastic sanctions may not be imposed as "mere penalties," *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); *see Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Societe Internationale pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

Where the party makes good faith efforts to comply, and is thwarted by circumstances beyond his control—for example, a foreign criminal statute prohibiting disclosure of the documents at issue—an order dismissing the complaint would deprive the party of a property interest without due process of law. *See Societe Internationale, supra,* 357 U.S. at 212, 78 S.Ct. 1087. It would, after all, be unfair and irrational to prevent a party from being heard solely because of a nonculpable failure to meet the terms of a discovery order. Note, The Emerging Deterrence Orientation of the Imposition of Discovery Sanctions, 91 *Harv. L.Rev.* 1033, 1041–42 (1978). Indeed, such measures would be gratuitous, for if the party is unable to obey there can be no effective deterrence, general or specific. Accordingly, "Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner." *Societe Internationale, supra,* 357 U.S. at 212, 78 S.Ct. at 1096.

The lower court did not determine whether willfulness caused plaintiff's failure to

---

**7.** Responding to a contention raised for the first time on reargument, the court noted that in light of the extensive proceedings already conducted before the magistrate, an evidentiary hearing in the district court could serve no useful function. The judge did note that a hearing could explore other actions litigated by plaintiff's counsel in federal court; he was in fact already aware of other cases in which these same lawyers had ignored discovery orders. But he concluded that such an inquiry would raise problems of privilege that would outweigh any probative value such a hearing could have.

**8.** Rule 37 was amended in 1970 to permit the imposition of a broader range of sanctions. By deleting the word "wilfully" from subsection (d) of the Rule, the drafters intended "that wilfullness [be] relevant only to the selection of sanctions, if any, to be imposed." Advisory Committee Note, *reprinted in* 4A J. Moore, *Moore's Federal Practice* ¶ 37.01[8], at 37–23 (2d ed. 1975); *Flaks v. Koegel,* 504 F.2d 702, 708 (2d Cir. 1974).

respond. It was possible, Judge Goettel apparently believed, that Cine's counsel simply did not understand the exact requirements of the magistrate's unwritten order compelling discovery. If so, Cine's failure to answer the damages interrogatories might not rise to the level of "willfulness" or "bad faith" for both of these conditions imply a deliberate disregard of the lawful orders of the court. *See Bon Air Hotel, Inc. v. Time, Inc.,* 376 F.2d 118 (5th Cir. 1967), *cert. denied,* 393 U.S. 859, 89 S.Ct. 131, 21 L.Ed.2d 127 (1968). The question, then, is whether gross negligence amounting to a "total dereliction of professional responsibility," but not a conscious disregard of court orders, is properly embraced within the "fault" component of *Societe Internationale's* triple criterion.

Fault, of course, is a broad and amorphous concept, and the Courts of Appeals have had considerable difficulty construing it in this context. Indeed, one court defined "fault" by the apparent oxymoron "intentional negligence." *Bon Air Hotel, Inc., supra,* 376 F.2d at 120. Thus, commentators have opined that an element of willfulness or conscious disregard of the court's orders is a prerequisite to the harsher categories of Rule 37 sanctions. 4A J. Moore, *Federal Practice* ¶ 37.03[2.–5] at 37–70 (2d ed. 1976); Note, *supra,* at 1033, 1043 & n.63; *accord, Dellums, supra,* 184 U.S.App.D.C. at 343, 566 F.2d at 235 (dictum). But the appellate cases commonly cited for this proposition hold only that dismissal is an abuse of discretion where failure to comply was not the result of the fault of any party. *E. g. Flaks· v. Koegel,* 504 F.2d at 712; *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1211 (8th Cir. 1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *Dorsey v. Academy Moving & Storage, Inc.,* 423 F.2d 858, 860 (5th Cir. 1970).

Unless we are to assume that the Court chose its words carelessly, we must accord the term "fault" a meaning of its own within the *Societe Internationale* triad.

And plainly, if "fault" has any meaning not subsumed by "willfulness" and "bad faith," it must at least cover gross negligence of the type present in this case. The holding in *Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir. 1977), which contains the apparent suggestion that dismissal ' is appropriate only for actions taken "deliberately or in bad faith," does not conflict with this conclusion. Counsel's action in that case at worst amounted to simple negligence and indeed may have been partially excusable, *id.* at 773 n.4. Flagrant negligence of the type involved in' the case at bar was simply not at issue.

In the only case that actually presented the question now before us, *Affanato v. Merrill Bros.,* 547 F.2d 138 (1st Cir. 1977), the First Circuit implicitly adopted the view we have expressed. There, the district court had entered a default judgment after what the appellate court characterized as "a series of episodes of nonfeasance which amounted, in sum, to a near total dereliction of professional responsibility" on the part of defendant's counsel. *Id.* at 141. The Court of Appeals affirmed, noting that counsel's failures "went well beyond ordinary negligence"—but without finding willfulness or bad faith. *Id.*

In the final analysis, however, this question cannot turn solely upon a definition of terms. We believe that our view advances the basic purposes of Rule 37, while respecting the demands of due process. The principal objective of the general deterrent policy of *National Hockey* is strict adherence to the "responsibilities counsel owe to the Court and to their opponents," 427 U.S. at 640, 96 S.Ct. at 2780. Negligent, no less than intentional, wrongs are fit subjects for general deterrence, *see* G. Calabresi, *The Costs of Accidents,* 133–173 (1970). And gross professional incompetence no less than deliberate tactical intransigence may be responsible for the interminable delays and costs that plague modern complex lawsuits.[9] An undertaking on the scale of the large contemporary suit brooks none of the

---

**9.** American Bar Association, *supra,* note 3, at 191–92; Kaufman, *The Philosophy of Effective Judicial Supervision Over Litigation,* 29 F.R.D. 207, 213 (1962).

dilation, posturing, and harassment once expected in litigation. *See Herbert v. Lando,* —— U.S. ——, ——, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115, 134, *id.* —— U.S. at —— ——, 99 S.Ct. at 1650–1651, 60 L.Ed.2d at 135–136 (Powell, J., concurring). The parties, and particularly their lawyers, must rise to the freedom granted by the Rules and cooperate in good faith both in question and response.

■ Considerations of fair play may dictate that courts eschew the harshest sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence, *Affanato, supra,* 547 F.2d at 141; *see SEC v. Research Automation Corp.,* 521 F.2d 585 (2d Cir. 1975) (dictum). But where gross professional negligence has been found—that is, where counsel clearly should have understood his duty to the court—the full range of sanctions may be marshalled. Indeed, in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where, as in this case, they are clearly warranted.

■ A litigant chooses counsel at his peril, *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim.[10] *See, e.g., Anderson v. Air West, Inc.,* 542 F.2d 522 (9th Cir. 1976) (dismissal for failure to proceed with due diligence); *RePass v. Vreeland,* 357 F.2d 801 (3rd Cir. 1966) (negligent failure to file suit within statute of limitations); *Universal Film Exchanges, Inc. v. Lust,* 479 F.2d 573 (4th Cir. 1973) (party not relieved under Fed.R.Civ.P. 60(b) from summary judgment where counsel's failure to proffer defenses was grossly, rather than excusably, negligent).

■ Plaintiff urges that because it has at last filed answers to the damage interrogatories, it should be permitted to prove its losses at trial. But it forgets that sanctions must be weighed in light of the full record in the case, *National Hockey, supra,* 427 U.S. at 642, 96 S.Ct. 2778. Furthermore, "[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules," *Dellums, supra,* 184 U.S.App.D.C. at 343–44, 566 F.2d at 235–36. Moreover, as we have indicated, compulsion of performance in the particular case at hand is not the sole function of Rule 37 sanctions. Under the deterrence principle of *National Hockey,* plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.

■ In light of the fact that plaintiff, through its undeniable fault, has frozen this litigation in the discovery phase for nearly four years, we see no reason to burden the court below with extensive proceedings on remand. Judge Goettel's opinion makes it abundantly clear that but for his misinterpretation of the governing law in this circuit, he would have wholeheartedly adopted Magistrate Gershon's original recommendation. Accordingly, the judge's order declining to adopt the magistrate's recommendation that proof of damages be precluded is reversed.

OAKES, Circuit Judge (concurring):

I concur in the result. It may be that the fault for the inexcusable delays in compliance with the discovery requests and orders

---

**10.** The acts and omissions of counsel are normally wholly attributable to the client. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). This case does not present the extraordinary circumstance of complete disappearance or mental illness of counsel that justified relief in *Vindigni v. Meyer,* 441

F.2d 376 (2d Cir. 1971) and *United States v. Cirami,* 563 F.2d 26 (2d Cir. 1977). Indeed, by Magistrate Gershon's finding and counsel's own admission, Clark, Cine's principal officer, was aware of every aspect of discovery and intimately involved with the progress of the case.

lay with the client or with the complexity of the interrogatories and requests of opposing counsel. If the latter, remedy lay with an application under Fed.R.Civ.P. 26(c). If the former, then the magistrate's recommendation of preclusion strikes at the proper party. It would be with the greatest reluctance, however, that I would visit upon the client the sins of counsel, absent client's knowledge, condonation, compliance, or causation.