**SECURITIES INVESTOR PROTECTION CORPORATION, Applicant,**

**Securities and Exchange Commission, Plaintiff,**

**v.**

**MEMME & CO., INC., Defendant.**

**No. 73 Civ. 3438 (RLC).**

United States District Court, S. D. New York.

Nov. 25, 1981.

Fischbein Olivieri & Rozenholc, New York City, for claimants-appellants; David Rozenholc, New York City, of counsel.

Morrison, Paul & Beiley, New York City, for trustee Gerald G. Paul, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

*Background Facts and Proceedings in the Bankruptcy Court*

Appellants, the "Melohn claimants,"[1] appeal from an order of Bankruptcy Judge Galgay, entered on February 23, 1981, dismissing their claims regarding the liquidation of defendant, Memme & Co., Inc. These claims were dismissed pursuant to Rule 37(b)(2)(C), F.R.Civ.P., for Joseph Melohn's failure to appear for deposition in violation of a court order. On January 23, 1981, Judge Galgay held a conference to discuss a motion by Edward Farman, trustee for the liquidation, to dismiss for failure to prosecute. Expressing its reluctance to dismiss for abandonment, the court announced that trial would commence in thirty days, *tr.* at 8, set February 11, as the date for Melohn's deposition, *tr.* at 20–1, and proclaimed that the case would be dismissed for any failure to comply with discovery demands. *Tr.* at 8.

---

1. Joseph Melohn; Lyon Management Fund; Joseph and/or Martha Melohn, as Trustees for the benefit of Johnny Melohn; Melohn Foundation, Inc.; Joseph and/or Martha Melohn, as Trustees for the benefit of Leon Melohn; Joseph and/or Martha Melohn as Trustees for the benefit of John Melohn; Joseph Melohn, as Trustee for the benefit of Leon Melohn, Alfons Melohn and Johnny Melohn, doing business under the name and style of Marjo Enterprises. These seven, allegedly separate and independent claimants are clearly all represented, in whole or in part, by Joseph Melohn, ("Melohn") the subject of the cancelled deposition which resulted in dismissal by the Bankruptcy Court.

Although the events after January 23, 1981, directly caused the dismissal of the Melohn claims, the history of this proceeding reveals much about why Judge Galgay terminated appellants' demands. In April 1974, the trustee was appointed to supervise the liquidation of Memme & Co. In June of that year, the Melohn claimants filed "proof of claim" forms seeking approximately $200,000.00 purportedly owed them as customers and creditors of Memme & Co. One year later, the trustee rejected these claims as unsubstantiated either by documents submitted by the Melohn claimants or Memme's books and records. Claimants objected to this determination, and both parties began conducting discovery in anticipation of a hearing on the issue. After several months of document exchanges, Joseph Melohn was deposed on March 18, 1976. In the trustee's opinion this deposition failed to clarify the contested issues sufficiently because of Melohn's lack of familiarity with his claims, and the hearing was adjourned indefinitely to permit further discovery.

Between late 1976 and June, 1978, there was no effort by the Melohn claimants to press their cause, apparently as a result of their failure to retain new counsel after the resignation of their attorney. The trustee requested the court to schedule a pre-trial conference in February 1978, but agreed to a postponement after being contacted by a purported replacement counsel who asked for, and received, time to familiarize himself with the case. New counsel met with the trustee for this purpose and indicated that meetings with Melohn were scheduled, but, by late April, he announced his withdrawal as counsel.

On June 15, 1978, the trustee was notified by claimants' present counsel, Fischbein, Olivieri & Rozenholc, of their involvement in the case. According to the trustee, despite a letter of July 12, 1978, informing counsel of the urgency of the matter, another eight month delay occurred before his outstanding request for accountant's worksheets was finally satisfied. Farman affidavit ¶ 10. There were, however, numerous telephonic and personal contacts of an unspecified nature between Farman and claimants' counsel throughout the remainder of 1978. Counsel states that these conversations left him with the impression that the trustee was "considering reversing his previous decision and allowing the Melohn claims" and "was moving to resolve this matter," but no particular justification is offered for these assumptions. Rozenholc affidavit ¶ 4. The assumptions seem especially tenuous since Rozenholc admits that the next contact he received from the trustee was a request to continue the deposition of Joseph Melohn. Id. at ¶ 5.

The trustee, through his counsel, Gerald Paul, requested, on March 17, 1980, a date in May for the completion of Joseph Melohn's deposition and, after receiving no response, reiterated the request in a letter dated April 8, 1980. Farman affidavit ¶ 11. This second letter, threatening a motion to strike the claimants' objections to the trustee's determination, was also not answered and was followed by a registered letter sent May 14, 1980. On June 2, Joel Bernstein of Rozenholc's firm telephoned the trustee's counsel and said that he had just received the case file and would soon suggest possible dates for the Melohn deposition. Id. at ¶ 12.

The deposition was scheduled for September 16, 17 and 18, but a September 9 phone call from the trustee's counsel to Mr. Bernstein unexpectedly revealed for the first time that Melohn had recently suffered an embolism and was not available for deposition. Id. at ¶ 13. A subsequent letter from Melohn's doctor confirmed that he was being treated for arterial and vascular diseases and was advised to avoid stressful situations. Citing this cancellation of the deposition and the history of Melohn's failure to press his claims or cooperate with discovery, the trustee moved, on December 1, 1980, for an order confirming the adverse determination of the Melohn customer claims based on failure to prosecute.

After a hearing on this motion on January 6, 1981, Judge Galgay noted that the trustee had moved the matter along efficiently, but postponed ruling on whether

claimants had lacked diligence, giving the parties two weeks to work out their differences before holding a further hearing. The parties' failure to reach an accord necessitated the January 23 hearing at which the Melohn interests were given one final opportunity to demonstrate their desire to obtain a determination on the merits.

As noted above, the Melohn deposition was set for February 11, 1981, by agreement in chambers and approval of Judge Galgay. On February 4, the trustee's counsel reluctantly agreed to a one week adjournment after being advised that Mr. Rozenholc had to attend to a family matter in Florida. Paul affidavit ¶ 4. At approximately 2:00 P.M. on February 17, the day before the rescheduled deposition, Mr. Paul was notified that Mr. Melohn had an appointment the next morning for some medical tests and could not attend the examination before 2:30 P.M. even though it had been set for 10:00 A.M. *Id.* at ¶ 5. In the early afternoon of February 18, Mr. Paul was told that the medical tests had left Mr. Melohn "light-headed" and unable to appear for questioning. *Id.* at ¶ 6. Furthermore, Mr. Melohn and his bookkeeper, C. Braun, whose deposition was scheduled for the next morning, were said to be unavailable until the following Monday, five days hence. *Id.* at ¶ 6, 7. The trustee refused to permit the substitution of an accountant for Mr. Braun and immediately filed a motion to dismiss the Melohn claims for violation of the court's discovery orders and failure to prosecute.

After a hearing on February 19, Judge Galgay dismissed the Melohn claims. Melohn's counsel reiterated the reasons for the several postponements, but did not explain further why Melohn made another appointment to conflict with his deposition, why he was unavailable between the 18th and the 23rd of February and what the precise nature of his medical problems were. No written verification of his medical claims was ever submitted to the court. At the close of arguments by all sides (in addition to counsel for the trustee and the Melohn claimants, George Bingham, counsel for the Securities Investor Protection Corporation,

the party with ultimate control of the trust funds, argued in favor of dismissal) the action was dismissed "based on the failure of Melohn and his counsel to obey the order of this Court * * * and under the authority of Rule 37." *Tr.* at 24–5. Despite relying on Rule 37(b)(2)(C), F.R.Civ.P., as authority for its action, the bankruptcy court explicitly referred to the frustrating history of the proceeding as relevant to its ruling. *Id.*

*Determination*

The Melohn claimants present several issues on this appeal, including the correctness of Judge Galgay's invocation of Rule 37(b)(2)(C), the trustee's own failure to comply with discovery requests or investigate the claims expeditiously, the non-essential nature of the Melohn deposition and the corresponding lack of prejudice resulting from his failure to appear and the court's refusal to permit their counsel to submit certain papers in opposition to the trustee's motion and proposed order. As to the trustee's conduct in this action and the importance of Melohn's testimony to its fair determination, claimants' arguments are irrelevant. First, there is no substantive support for their position; the trustee has offered, since July 28, 1975, to allow claimants to inspect any of the debtor's records, *see* Farman affidavit ex. C; Judge Galgay expressed his doubt that the trustee could be accused of inefficient investigation, *tr.* of January 6, 1981 at 22; and the Melohn deposition was clearly the most important unfinished discovery to the trustee. Furthermore, none of these arguments, if persuasive, could excuse Melohn's failure to comply with discovery orders.

■ The Supreme Court recently stated that the question for an appellate court examining a Rule 37 dismissal is not whether that court as an original matter would have imposed the sanction in question, but whether the lower court abused its discretion in doing so. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976), *rehearing denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158. In determining

the propriety of the lower court's ruling, the record must be scrupulously studied for indications that its contents suffice to justify the conclusions reached. *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 506 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). The substantive aspects of the record will be studied insofar as they are relevant to the appropriateness of the disposition below. One such inquiry arises from appellants claim that the bankruptcy court failed to consider adequately the willfulness of their conduct in meting out the severest available sanction.

█ A challenged dismissal order is only sustainable if the failure to comply with discovery "was in fact due to willfulness, bad faith or fault and not to an inability to comply." *Flaks v. Koegel*, 504 F.2d 702, 709 (2d Cir. 1974). But, by its own terms, this standard does not require willfulness in the sense of no less than intentional wrong. If this were so, the two remaining parts of the triad would be rendered meaningless, along with the entire final clause. Taken as a whole, this threefold criterion indicates that dismissal is an abuse of discretion only "where failure to comply was not the result of the fault of any party." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1067 (2d Cir. 1979). And "fault," while possibly not extending to simple negligence or mere oversight of counsel, clearly encompasses gross professional negligence, an example of which is an attorney's failure to meet court ordered discovery deadlines. *Id.* at 1068.

█ Both a party's conduct and the disregard of professional responsibilities by hired counsel can lead to extinction of a claim under Rule 37. *Id.* In this case, the action of Joseph Melohn and his legal representatives in the period between January 23 and February 19, 1981, in light of the full record in this seven-year litigation, constituted "fault" in the least and could be seen as willful, bad faith noncompliance. Judge Galgay's ruling is not fatally insufficient for omitting specific reference to any of the three types of wrongful conduct as long as his findings of fact show that one or more of them was engaged in. *See id.* at 1068 (reversing the lower court's refusal to dismiss because the fact findings indicated that plaintiff was at fault in prolonging the discovery phase of the litigation for four years).

A judicially mandated deposition date was set during a conference attended by both parties. Soon thereafter, the claimants' counsel postponed the inquiry by one week to attend to a personal family matter. It is hard to ignore the fact that Mr. Rozenholc's associate, Bruce Weiner, while apparently not capable of defending this scheduled deposition on February 11, seemed to be ready to represent the claimants at the three examinations he attempted to reschedule for February 19 and 23, and was appellants' sole counsel at the final February 19 hearing.

Mr. Melohn's dilatory conduct was sufficient to justify dismissal even apart from his attorney's lack of diligence. Knowing that his deposition had already been delayed once, Mr. Melohn proceeded to schedule medical tests to conflict with his new discovery obligation. At no time did he attempt to explain this incredible lack of respect for the bankruptcy judge's order— neither he nor his attorney claimed that his medical needs were acute at the time, neither suggested that he could get no other appointment for his tests, neither detailed the nature of the procedures or how they produced the effects which prevented his testifying that afternoon and neither explained why a five-day postponement was necessary (except that, at the hearing, counsel stated that all three witnesses were religious and, therefore, unavailable for part of Friday). In fact, Melohn never testified in person or via affidavit, as to his constant failures to comply.

Viewed in a vacuum, this flagrant disregard for a judicially mandated discovery timetable constitutes willfulness and bad faith, *see Cine Forty-Second Street Theatre, supra* at 1067, as well as fault. In *Cine* plaintiff missed several deadlines for answering interrogatories, filed inadequate responses at other times and, over the

course of three years, never provided the information sought despite a magistrate's warnings and orders. *Id.* at 1064–5. The similarity between the cases extends to the existence in both of eleventh hour claims that the discovery sought was irrelevant. *Id.* at 1064. And, the clearest distinction between them, the fact that *Cine's* plaintiff's might have been acting upon a baseless but good faith construction of the magistrate's order, *id.* at 1065, makes the Melohns' claimants' cause less sympathetic since they do not and cannot claim such confusion.

When the scope of review is broadened, as it must be, to include the entire history of the action, the justification for dismissal is brought into sharper focus. At least four years witnessed no efforts by these claimants to obtain an alleged $200,000 due them from the trustee and, over approximately half of this time no progress in hiring counsel to do so. Through tactics such as ignoring the trustee's communications, claimants managed to avoid Melohn's deposition for a full eleven months prior to dismissal. Faced with such a reluctant litigant, the bankruptcy judge exhibited admirable restraint when, on January 6, 1981, he refused to find the claim abandoned and, on January 23, 1981, he imposed the light sanction of instituting rigid discovery guidelines. Discretionary dismissal was justified when these orders were violated.

The Melohn claimants contend that they were denied due process by Judge Galgay's handling of the motion to dismiss. Their claim is based upon the length of the hearing at which dismissal was ordered (one hour), the refusal to allow the submission of opposing papers after a decision had been reached, the short notice on which the hearing was scheduled and the failure to accept a counter-order. These arguments cannot prevail.

Appellants were informed by opposing counsel on the afternoon of February 18, 1981, that a motion to dismiss would be prepared and made returnable the next morning pursuant to Judge Galgay's instructions. Counsel was aware that he would be expected to explain Melohn's failure to appear at deposition and was asked

several times at the hearing to do so, but did nothing but reiterate that Melohn is not well and had an appointment for medical tests. Counsel never produced any testimony to substantiate a claim that Mr. Melohn was unable to testify, nor did he even assert such a claim, *compare Gill v. Stolow*, 240 F.2d 669, 671 (2d Cir. 1957) (dismissal under old Rule 37(d) overturned because there was no consistent course of obstruction and deponent submitted post-default documentation of his ill health), stating instead that the examination could take place on the following Monday. He spent the four days between argument and the signing of the order asking permission to submit papers, but failing to do so. This situation is clearly distinguishable from one in which dismissal was ordered without any response by the losing party. *See Flaks, supra* at 706. Claimants' opportunity to present their position was adequate and did not approach a denial of due process.

For the foregoing reasons, the order dismissing the Melohn claims pursuant to Rule 37(b)(2)(C) is affirmed.

IT IS SO ORDERED.