[redacted]

**Alvin Harvey BAKER, Plaintiff,**

**v.**

**ACE ADVERTISERS' SERVICE, INC., Leon Gross, President, and Harry Basch, Vice President, Defendants.**

**No. 87 Civ. 2697 (KMW).**

United States District Court, S.D. New York.

Feb. 1, 1991.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Eileen N. Nadelson, New York City, for plaintiff.

Richard Muser, Clifton, Budd & DeMaria, New York City, for defendants.

OPINION AND ORDER

SHARON E. GRUBIN, United States Magistrate Judge:

Plaintiff brings this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging termination of employment because of racial discrimination. Currently before the Court is a motion by defendants for sanctions pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure because of plaintiff's conduct with respect to the transcript of his deposition. Defendants seek dismissal under Rule 37(b)(2)(C), but because the sanction of dismissal should be used in only the rarest circumstances, because plaintiff is

*pro se* and because I believe another efficacious but less severe sanction will better serve the purposes of the discovery process, I grant defendants' motion to the extent set out below.

## BACKGROUND

### I.

Plaintiff, Alvin Harvey Baker, was granted leave to proceed *in forma pauperis* and his *pro se* complaint was filed on April 22, 1987. The defendants were served on May 27, 1987 and filed their answer on June 15, 1987. Plaintiff filed an application for appointment of counsel which was denied by the Honorable John M. Cannella, to whom this case was then assigned, on August 20, 1987 without prejudice to renewal. The case was then referred to me on August 25, 1987 for general pretrial purposes. One week later, at 10:00 a.m. on September 2, I received a telephone call from the office of defendants' attorney. Mr. Baker had appeared there because defendants were scheduled to produce documents to him and he was scheduled to be deposed. Plaintiff, however, refused to be deposed. During the telephone conference plaintiff stated he had not received notice that the deposition, which had been rescheduled from an earlier date, was to occur that day, and he wanted an opportunity first to review defendants' documents. I directed that plaintiff should have the morning to review the documents and that his deposition should commence at 1:00 p.m. Alternatively, I told Mr. Baker that he could adjourn the deposition and reschedule it if he had not received notice of it, but that if it later were revealed that he in fact had received defendants' notice of deposition and defendants' counsel's rescheduling letter, both of which he claimed not to have received, he might be subject to sanctions. Mr. Baker decided to choose the first option and proceed with the deposition that afternoon. I then explained to Mr. Baker, in view of his *pro se* status and certain remarks he had made during the telephone conference, that at the deposition he would be required to answer all questions asked except those he did not understand. I explained that if he objected to a question, he could state that he objected, but that he was still to answer; the objection would be considered by the court before the testimony could be used at trial. I further told him that if he did not understand what was being asked at any time, he should state that he could not answer for that reason, and defendants' attorney would be required to ask the question in another way. The deposition went forward that afternoon but was adjourned after 3½ hours apparently at the request of the court reporter who had become fatigued. It was continued at 1:00 p.m. the following day when, again, a call was placed to me because Mr. Baker had refused to answer a question posed by defendants' attorney. Mr. Baker had been asked to state what occurred at a meeting between him and the defendants on the day he had been fired, and he had refused to answer because the question had already been "adjudicated" at an administrative hearing. I again explained to plaintiff that even when he objected to a question, he was to state his objection but then give his answer; if the objection were valid, his answer would not be admitted into evidence at trial.[1] At the end of the second day, Mr. Baker told defendants' attorney that he wished to speak with me again prior to submitting to further questioning and a telephone conference was then scheduled for September 8, 1987. During that telephone conference defendants' counsel said he needed one and one-half to two more hours to complete the deposition. In light of our discussion during this telephone call concerning the mechanics of the deposition and other aspects of discovery which would apparently require rulings and explanation from the court to proceed, I told the parties to defer further discovery until we had a conference in court the following week. At that conference, I ruled that a third deposition session would be permitted but would be limited to two hours. I made various additional rulings with respect to documents and information requested by plaintiff, and the

---

1. *See* Tr. 9/3/87 at 156–58.

parties thereafter embarked on further discovery. However, it quickly became clear that if the case were ever going to be prepared properly for trial, plaintiff would need an attorney. Plaintiff had been sending correspondence almost daily to defendants' counsel and to me with demands for information from the defendants and accusations about their conduct, and defendants' counsel had indicated an intention to move for summary judgment. Accordingly, on November 23, 1987 I issued an order granting plaintiff's requests for appointment of counsel, and staying all discovery pending counsel's appointment. Thereafter, Eileen N. Nadelson, Esq. of the firm of Traub & Lesser accepted representation of plaintiff and submitted a notice of appearance on April 6, 1988.

After a pretrial conference was held and a scheduling order issued, the parties engaged in further discovery and counsel agreed to schedule the continuation of plaintiff's deposition for August 2, 1988. However, on July 8, 1988, pursuant to both attorneys' request, a telephone conference was held. Mr. Baker's counsel had received back from Mr. Baker the original transcripts of his two prior deposition sessions which had been forwarded to him for correction and signature. Mr. Baker had "corrected" the transcripts by drawing a line through *every* answer or statement attributed to him therein and by writing in the margin next to every answer "Plaintiff [or "I"] never gave this answer." He had also indicated next to some of the questions that "This question was never asked." Counsel were at a loss for how to proceed and were requesting assistance from me. I told plaintiff's attorney that she should thoroughly advise Mr. Baker as to the scope and appropriateness of "corrections." Ms. Nadelson indicated that she had already spoken to Mr. Baker but would do so again. I told defendants' attorney to continue with the deposition as scheduled on August 2. If some application were thereafter needed, he would be free to bring one on. On July 27, 1988, pursuant to plaintiff's counsel's request, another telephone conference was held. Ms. Nadelson told me that she had spoken with Mr. Baker but

he would not follow her advice and that she was not certain that Mr. Baker would appear for the continued deposition without a court order. I issued an order directing plaintiff to appear for the scheduled deposition.

The deposition was eventually completed, and the parties progressed with other remaining discovery. On September 29, 1988, Mr. Baker sent a letter to Chief Judge Brieant of this Court "to make a formal complaint" against defendants' attorneys on account of the "fraudulent, deceptive lies and multiple distortions" contained in the deposition transcripts. On October 12, 1988 defendants' attorney requested a telephone conference to discuss Mr. Baker's deposition transcript "corrections." Instead, I scheduled an in-court conference for October 20, 1988 and instructed Mr. Baker's counsel to have him be present.

At the conference on October 20 I was informed of the following events. On October 5 defendants' attorney received from plaintiff's attorney the three original deposition transcripts given to plaintiff for review and signature. Mr. Baker had apparently not retreated from his prior contention with respect to the first two sessions that he had never given the answers shown and, moreover, he had similarly defaced the transcript of the third session by crossing out virtually every response therein and writing merely "Plaintiff never gave this answer." He also included miscellaneous annotations of various kinds including allegations of "bad faith," "fraud" and racial prejudice against defendants' attorney, and he questioned every statement made on the record by his own attorney by drawing multiple question marks next to each. He had refused to sign any of the transcripts. Defendants' attorney requested permission to move for the sanction of dismissal under Rule 37.

At the conference I asked Mr. Baker whether it was indeed his position that he did not make *any* of the statements he had crossed out, and he confirmed that it was. I pointed out the section of the transcript that set forth the telephone conference

which he, defendants' attorney and the court reporter had with me during the second day of deposition. (*See* p. 66, *supra*, and Tr. 9/3/87 at 156–58.) Mr. Baker had not only crossed out the comments attributed to him, but also those I made during the telephone conference. I told Mr. Baker that I recalled the telephone conference and that the transcript was correct in this regard. He, nevertheless, persisted in his contentions.

After further discussion, I denied the defendants the opportunity to move for dismissal. However, I explained to Mr. Baker once again that the defendants had the right to obtain answers from him and that if he refused to give them his case would indeed have to be dismissed. I told Mr. Baker that he could not simply deny having given the answers the transcripts showed him to have given; rather, he was required to state the "accurate" answers. With Mr. Baker's assent, I directed that he review the deposition transcripts again and with respect to every answer:

(1) if he believed after further review that he had given the answer shown in the transcript, he was to so state;

(2) if he had not given the answer shown, he was to write down the answer that he had given; or

(3) if he knew he had not given the answer shown but could not remember the answer he did give at the deposition, he was to so state and, in addition, provide an answer to the question.

Further, I explained again that unless Mr. Baker gave answers to the questions, his case could not proceed and would be dismissed. Mr. Baker showed his full understanding. I also directed Mr. Baker to sign the deposition under oath before a notary public. He said that he would.

On November 9, 1988, after Mr. Baker had completed his task and submitted his new corrections to defendants' counsel, I held a telephone conference with Mr. Baker, his counsel and defendants' counsel. Defendants' counsel informed me that Mr. Baker had not followed my directions, that the deposition transcripts were still useless and that he wished to renew his request to move for the sanction of dismissal. I then permitted him to bring the instant motion.

## II.

It is difficult to describe what Mr. Baker has done with respect to the deposition transcripts. With the exception of a *handful* of answers, it is still his position that he did not give the answers the transcripts show him to have given. Those few responses he now agrees he gave, are either self-serving or wholly nonsubstantive.[2]

He has now supplied the "answers" which he contends he gave during the deposition to about one-third of the questions, but many of those answers are incomplete, evasive, not responsive and argumentative.[3] Moreover, it is clear in many instances that the answers are not ones he

2. For example, whereas Mr. Baker claimed at first not to have given the following answers to the following questions, he now recalls that he did give them:
Q. You are saying you cannot answer [the question]. Correct?
A. If you explain to me.
[MR. BAKER'S ATTORNEY]: Do you understand the question?
THE WITNESS: No, I do not.
Tr. 8/2/88 at 23.
Q. Mr. Baker, I will show you a document that bears the title "Charge of Discrimination." It is two pages. It has a date on the second page of February 27, 1986.
A. Okay.
*Id.* at 31.

3. For example, Tr. 9/3/87 at p. 231, lines 8–13 originally read as follows:

Q. You were reinstated about three weeks after you had been discharged?
A. It's possible.
Q. But you did miss some time from work, correct?
A. It's possible.
Having crossed out the above answers and stated that he never gave them, Mr. Baker has now corrected them to read as follows:
Q. You were reinstated about three weeks after you had been discharged?
A. I was not give my correct pay in violation of the Civil right under Title VII for pay.
Q. But you did miss some time from work, correct?
A. I was not give my correct pay in violation of Title VII nor was give my workman compensation.

could have given from the context of the questions following them.

With respect to approximately another one-quarter of the questions, he has given no answer at all, simply saying nothing or saying he does not recall the answer. In addition, Mr. Baker has now interposed objections to numerous questions. Although he appears to maintain that I directed he could register objections at this late date, I did not. Moreover, he has seen fit to disregard now what had always been quite clear to him during each of his deposition sessions—that even if he objected to a question, he was required to answer it after interposing his objection.

On September 20, 1989 I issued an order scheduling an evidentiary hearing for November 2, 1989. The order provided as follows:

I have reviewed the plaintiff's corrections to his deposition transcript submitted pursuant to my directives at the conference held October 20, 1988. Plaintiff indicates through these corrections that, with the exception of virtually only a handful of them, all responses attributed to him by the court reporters were incorrectly transcribed; indeed, from the "corrections" it appears the attributed responses would have had to have been wholly fabricated by the court reporters. Given this extreme divergence between what the transcript shows and what plaintiff seems to contend actually occurred, an evidentiary hearing will be necessary prior to determining defendants' motion for the sanction of dismissal.

At this hearing the court will wish to hear the testimony of the court reporters who transcribed the deposition, the testimony of Mr. Baker and the testimony of any other persons the parties wish to present who were present at the deposition sessions. The sole purposes of the hearing will be to determine which answers plaintiff did give at the deposition and to confirm plaintiff's understanding of the court's orders to him concerning the answering of the questions at the deposition and his subsequent "corrections."

At the hearing defendants presented as witnesses the two court reporters who had covered the deposition sessions, who verified that they were independent court reporters and related the routine procedure by which a transcript is prepared from the ribbon notes taken at a deposition. Each testified that the normal procedure was followed with respect to Mr. Baker's deposition. Each further separately testified that the transcripts they provided were accurate. After the reporters' testimony, Mr. Baker asked to put defendants' attorney on the stand. I granted his request. Defendants' attorney testified that the deposition as transcribed by the reporters was accurate. Next, Mr. Baker insisted that he be allowed to call his pro bono attorney, Ms. Nadelson, as a witness. I advised Mr. Baker that if he did so, defendants' attorney would be entitled to also question her and that his attorney-client privilege would be waived. Mr. Baker maintained his desire to question her. I thereupon formally relieved Ms. Nadelson from representing Mr. Baker.[4] Ms. Nadelson then testified that, with the exception of perhaps half a dozen nonsubstantive minor errors in transcription, the final deposition session at which she had been present (she had not been appointed when the first two were taken) had been accurately set forth by the court reporter.

Finally, Mr. Baker took the witness stand. Mr. Baker confirmed that he stood by his position that the deposition transcripts were in essence wholly incorrect and that his final "corrections" showed what actually took place at the deposition. Illustrative of Mr. Baker's approach was his testimony about the transcript of the second day of his deposition, September 3, 1987, at page 156. As indicated earlier herein, during that session a conference call had been placed to me. The reporter

---

4. Mr. Baker had been asking me for quite some time to allow him to go back to proceeding *pro se,* but I had until the hearing denied his requests for what I believed were his best interests.

had transcribed all but the preliminary part of the conference call. However, Mr. Baker testified on November 2 why he deleted my statements:

THE COURT: .... You have crossed [the words] out. Is that because you believe I didn't say them?

THE WITNESS: No, it's because you ain't speaking about the 3rd of September. You are talking about the 2nd of September.

THE COURT: Page 156, there is the transcript here.[5]

THE WITNESS: I see that.

THE COURT: September 3, 1987.

THE WITNESS: I am looking at it.

THE COURT: You crossed out the statements made by me?

THE WITNESS: Right.

THE COURT: In other words, I didn't make those statements at that time?

THE WITNESS: What I am saying is at that time you did not. We talked—

THE COURT: Let me ask you the next question.

THE WITNESS: —on September 2nd.

THE COURT: September 3rd?

THE WITNESS: September 2nd, your Magistrate.

THE COURT: September 2nd is when?

THE WITNESS: She [the court reporter] put us on the phone together on September 2nd.

THE COURT: We did not talk on September 3rd?

THE WITNESS: No, we didn't. You told her that you were postponing the deposition until the 8th of September.

Tr. November 2, 1989 at 101–02.[6] Yet, it is quite clear that the conference call took place on September 3 as indicated in the deposition transcript of that date. Not only do my own contemporaneous file notes show the call, but also I remember its occurrence.

Lastly at the hearing Mr. Baker asked to have a stenographic expert from the NAACP review the actual ribbon that was produced by the steno machines at the deposition. (The reporters had not brought these ribbons to the hearing.) I directed the following: The reporters were to send me their ribbons. Mr. Baker was to inform me within a week of the identity of his proposed expert witness. On November 21, we would reconvene and Mr. Baker's expert would examine the ribbons in court and compare them to the deposition transcripts. In addition, I informed Mr. Baker as follows:

THE COURT: .... [T]here is no doubt in my mind that sanctions are going to be imposed in this case on you. What those sanctions are is a different story. At the very least, Mr. Baker, those sanctions are going to include requiring you to pay the cost the defendants have incurred for this procedure— do you understand that—for having them make this motion.

Now, the more proceedings we have, the more expensive it's going to be for you.

MR. BAKER: Okay.

THE COURT: If we meet again and [defendants' counsel] comes back here for another hour or two, his costs for doing that, you will have to pay for them. Do you understand that?

MR. BAKER: Yes, I do.

THE COURT: And do you still wish to proceed that way?

MR. BAKER: Yes, I do.

*Id.* at 103–04. Later on, the following was said:

THE COURT: .... [T]here is no doubt in my mind, Mr. Baker, unless there is something on these tapes that changes what has been said here today ... we

---

5. Mr. Baker was deposed on September 2 and September 3, but the transcript pages of those two days are numbered consecutively. Page 156 appears only in the September 3 transcript which contains pages 139 through 296.

6. Mr. Baker's testimony on this point, which I believe is incredible on its face, is made more unfathomable in view of the fact that at the prior conference on October 20, 1988, I had already referred Mr. Baker to the same deposition page and told him that I personally remembered that, contrary to his contentions, the transcript did accurately reflect what had occurred. (*See* pp. 67–68, *supra.*)

have had two court reporters and two attorneys testify that what appears on the deposition transcript is true and accurate. I told you a long time ago that it was impossible just about for me to believe that the court reporters got everything wrong, okay. The only one, the only person I have heard from who says that the court reporter has got it wrong is you.

Unless these ribbons show something different than what's in these transcripts, in other words, unless they prove that you are correct, you are going to be required to pay the cost of these entire proceedings and that's many, many thousands of dollars.

Do you understand that?

. . . . .

MR. BAKER: I will have to pay. They will get their money.

*Id.* at 108.

On November 8, 1989 I received from Mr. Baker "Plaintiff's Affidavit of Reconsideration of Request to Call Back Court Reporters," in which Mr. Baker stated that he had "reconsidered, as suggested by the Court, that it would not be necessary to call the Court Reporters back with the ribbon (tapes), at this time." Among the reasons plaintiff proffered for his reconsideration was the following one, which again illustrates Mr. Baker's apparent difficulty in acceptance of events:

Both Court Reporters in their responses to questions asked at the evidentiary hearing on November 2, 1989, stated: that it was impossible for Plaintiff to have given the answers in the typed deposition. The Court Reporters did not state that Plaintiff's answers were true or false in the typed deposition.

On November 8, 1989, I sent a letter to Mr. Baker, to his former attorney and to defendants' attorney confirming that the Novem-

ber 21 conference would be cancelled and that I would take this motion under advisement after receipt of the transcript of the November 2 hearing. The record on this motion was accordingly then closed.[7]

## DISCUSSION

■ Rule 37(b)(2) of the Federal Rules of Civil Procedure provides for the imposition of sanctions when a party fails to comply with a discovery order of the court. The sanctions authorized are any that are "just" in the circumstances, including those of great severity such as the preclusion of evidence, the striking of pleadings and the dismissal of the case. Dismissal is the harshest sanction and should only be used in circumstances of "willfulness, bad faith, or ... fault," *Societe Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958), and when other available sanctions are insufficient. It is quite clear, however, that when such circumstances do exist, the courts cannot condone them by refraining to dismiss a party's claim when appropriate. Sanctions under Rule 37 are meant to serve three general purposes. First, of course, they seek to obtain compliance with the discovery orders issued in a specific case. Second, they make certain that a party will not benefit from its own failure to comply. Third, they provide a general deterrent effect both in the case at hand and on other parties in other litigations. *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam), the Supreme Court instructed us that although the extreme sanction of dis-

---

7. Since that time Mr. Baker has flooded the court and defendants' attorney with correspondence and proposed motions of various sorts. He has filed at least 23 additional "pleadings" and numerous letters. His submissions purport to move for various types of relief, such as summary judgment, a speedy trial, a preliminary injunction and for Judge Cannella to disqualify himself. Because Mr. Baker was told, on several occasions, that nothing further was to be done in this case and no additional papers were to be submitted until I issued my decision, the array of submissions he has made has not been read by me, nor any of defendants' counsel's responses thereto.

missal must be used sparingly, it "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." 427 U.S. at 643, 96 S.Ct. at 2781.

The courts of this Circuit have consistently emphasized the necessity of appropriate sanctions. Ten years ago Chief Judge Kaufman explained for the Court of Appeals as follows in *Cine Forty–Second Street Theatre Corp.*:

> The Federal Rules of Civil Procedure carried the discovery principles of Equity into the nation's courts of law in the hope of expediting the litigation process and of transforming the sporting trial-by-surprise into a more reasoned search for truth. On their face, the Rules deal harshly with the recusant deponent and the dilatory answeror. Courts have been reluctant, however, to impose the full range of sanctions available under Rule 37. Preclusion of testimony and dismissal are, to be sure, extreme sanctions, to be deployed only in rare situations. But unless Rule 37 is perceived as a credible deterrent rather than a "paper tiger," the pretrial quagmire threatens to engulf the entire litigative process.

602 F.2d at 1063–64 (footnotes and citation omitted). More recently, in *Update Art,* the Circuit reaffirmed its resolve in affirming preclusive sanctions imposed by a magistrate for failure to comply with discovery orders:

> In holding as we do, we wish to emphasize the importance we place on a party's compliance with discovery orders. Such compliance is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril. If one suggests that our decision today is strong medicine, that is precisely what it is intended to be.

843 F.2d at 73.

■ Plaintiff asked this court to provide him, free of cost, with an attorney. The court did so when it became clear that plaintiff was not proceeding properly with discovery. Plaintiff, however, thereafter refused to follow the advice of that attorney and began to accuse her of conspiring against his interests with defendants' attorney. Plaintiff, in essence, has proceeded throughout this case as if he had no attorney. But, even *pro se* parties must adhere to the rules governing all civil proceedings; and, while *pro se* litigants may deserve more lenient treatment than represented parties, they too must suffer the consequences of their actions, especially when they have been warned of the sanctions which could follow disobedience of a court order. *See McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988); *Dukes v. New York City Police Commissioner Ward,* 129 F.R.D. 478, 481 (S.D.N.Y.1990); *Potter v. Obolensky,* No. 82 Civ. 6978 (JFK) (S.D.N.Y. March 3, 1988) (1988 Westlaw 25187).

I have carefully considered defendants' request for dismissal of the action. Dismissal, however, is only to be used if alternative, less drastic sanctions are inappropriate. *See, e.g., Hull v. Waterbury Petroleum Products, Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988); *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930 (2d Cir.1988); *Salahuddin v. Harris,* 782 F.2d 1127, 1132 (2d Cir.1986); *Israel Aircraft Industries, Ltd. v. Standard Precision,* 559 F.2d 203, 208 (2d Cir.1977). To be sure, plaintiff has disobeyed at least three of my orders—those of September 2, 1987, September 3, 1987 and October 20, 1988. Having entertained at length plaintiff's reasons for striking all his original answers as shown in the transcripts, I must reject his explanations. Nothing has been shown to me to indicate the inaccuracy of the original transcripts, nor that the questioning was conducted in bad faith or in an unreasonable, annoying, embarrassing or oppressive manner. *See Paiewonsky v. Paiewonsky,* 50 F.R.D. 379, 380 (D.V.I. 1970). To the contrary, it would defy credibility to believe that the transcripts show each answer incorrectly, and I find the testimony of the court reporters, defendants' counsel and plaintiff's counsel far more credible than plaintiff's testimony. I believe, however, that adequate sanctions

short of dismissal are available to vindicate the spirit of the discovery rules and, at the same time, make sure plaintiff's behavior does not unduly prejudice the defendants.

Under Fed.R.Civ.P. 30(e), a witness is permitted to make changes in the form or substance of a deposition transcript if they are accompanied by a statement of the reasons for making them. The rule further provides that if the deposition is not signed by the witness within 30 days of its submission to the witness, the officer before whom the deposition was taken may sign, and the deposition "may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part." I have found plaintiff's reasons for his refusal to sign the original transcripts not credible. I further find that plaintiff's "corrections" render the deposition useless. All but a handful of answers are crossed out. Many questions are simply then not answered at all, and many that have answers are nonresponsive or, if responsive, leave defendants' counsel now in the position of not being able to follow up such answers or ask clarifying questions unless he commits more hours in attempting to depose plaintiff further. There are so many objections and cross-references in the "corrected" answers that it is not possible to read the deposition with any clarity. In short, plaintiff has now answered the questions he wants to answer and not those he does not want to answer. Such "corrections" are not what is contemplated by Rule 30(e).

In *Barlow v. Esselte Pendaflex Corp.,* 111 F.R.D. 404 (M.D.N.C.1986), a plaintiff similarly "mutilated" a deposition transcript by inserting corrections, comments and cross-references and deleting portions of the transcript. The court found the deposition transcript "unusable":

> Plaintiff's actions are at variance with the letter and spirit of Rule 30(e) and, therefore, her attempted "changes" are simply inoperable or a nullity.... The manner and number of changes disclose a lack of good faith by plaintiff.

111 F.R.D. at 406. The court pointed out that other courts have required that noncomplying deponents pay for the court reporter to amend the transcript and have reopened the examination at the deponent's expense if the deposition was rendered useless, but that such remedies would not be adequate for Barlow who was "not merely noncompliant," but "obstreperous." The court held as follows:

> By virtue of either the sheer number of changes or the cutting, pasting and mutilation, plaintiff has effectively destroyed her deposition and sabotaged the deposition process. In such circumstances, requiring the reporter to reassemble the deposition, or defendant to reexamine plaintiff, would not further the desired aim of keeping the discovery process as efficient and inexpensive as possible. It would instead reward harassing conduct, improper purposes, or unnecessary delay and costs in litigation, which in other parts of the civil rules are explicitly condemned. *See* Rule 11, Fed. R.Civ.P. Therefore, the Court believes the proper sanction here is to deem plaintiff to have refused to have signed, or to have waived signing of, the transcript as set out in Rule 30(e), Fed.R.Civ.P., and that the transcript be deemed an accurate representation of the deposition testimony.

> .     .     .     .     .

> This remedy more nearly reflects the logical consequences of plaintiff's actions and it protects defendant who has already spent hours at the original deposition trying to ascertain plaintiff's position.

111 F.R.D. at 406–07 (citation omitted).

Plaintiff's changes herein are so far-reaching and substantive that they must be treated as a nullity and disregarded. As in *Barlow,* the proper sanction is to deem plaintiff to have waived signing the original transcript and deem the three volumes of that transcript an accurate recital of the deposition testimony. *See also Willco Kuwait (Trading) S.A.K. v. deSavary,* 843 F.2d 618, 628–29 (1st Cir.1988). Defendants shall be free to use such transcript,

as originally prepared by the reporters, in connection with a summary judgment motion if they choose to make one, at trial or for any other purpose permitted by the Federal Rules. The court is currently in possession of one copy of the deposition from the court reporters that has not been defaced. That copy shall be filed forthwith.

Finally, defendants should not be asked to shoulder the economic burden of plaintiff's willful misconduct. Plaintiff shall be required to pay the expenses, including attorney's fees, of this motion. Such expenses include the time and costs of the November 2, 1989 hearing. Defendants shall submit an affidavit of such expenses, and plaintiff shall reimburse defendants within thirty (30) days of receipt of the affidavit.

## FURTHER PROCEEDINGS

The parties are further directed to complete any remaining discovery by March 15, 1991. A final pretrial conference before me is hereby scheduled for March 19, 1991 at 11 a.m. At that conference, a trial date will be set and, if necessary, a schedule for any remaining motion practice.

Finally, plaintiff is admonished that no further evasions of his obligations will be tolerated. Plaintiff has come very close to requiring the dismissal of this action. Any further abuse of the discovery process, or any disobedience of the deadlines set herein or other orders of this court concerning the manner in which discovery will be conducted, will assuredly result in such a dismissal.

SO ORDERED.

