UPDATE ART, INC., Plaintiff,

v.

MAARIV ISRAEL NEWSPAPER, INC. d/b/a "Maariv International Edition" and "Maariv Weekend" (a/k/a Maariv Soph Shavua"), Maariv Promotions, Ltd, Irit Shmagar, Tzi Levy, Tamar Guy, Yoram Neeman, Neta Greenspan, Nahum Hacohen, Ron Dagoni, "John Doe" and "Jane Doe", Defendants.

No. 86 Civ. 1838.

United States District Court,
S.D. New York.

May 12, 1986.

M. Scott Vayer, New York City, for plaintiff.

Yisraeli & Yerushalami, New York City, for defendants; Robert Hirsch, of counsel.

## OPINION AND ORDER

EDELSTEIN, District Judge:

Defendant has moved for relief from an order dated March 14, 1986 ("March 14 Order"), in which this court referred this matter to a Magistrate to conduct an inquest regarding the damages sustained by plaintiff. The March 14 Order stated that no issues of fact regarding liability existed and that the sole issue was that of damages. Defendant's motion is granted in part and denied in part. The March 14 Order is amended in accordance with this opinion.

## BACKGROUND

Plaintiff, Update Art, Inc. ("Update"), is the owner of exclusive interests in the

graphic art known as "Ronbo." [1] "Ronbo" is a photograph which superimposes President Ronald Reagan's face on a muscular body which is firing a machine gun. The body is intended to mimic the title character from the movie "Rambo." Plaintiff has produced posters containing the "Ronbo" character.

Defendants publish an Israeli newspaper which is circulated in Israel under the name Maariv as well as in the United States under the name Maariv International Edition. The February 28, 1986, weekend edition of the newspaper contained a full-page copy of the "Ronbo" poster. Defendants did not have plaintiff's permission to use the copyrighted "Ronbo" artwork nor did Maariv seek plaintiff's permission to use the artwork.

Plaintiff filed this action on March 3, 1986 and sought an injunction against Maariv's further use of the "Ronbo" artwork, and accountability regarding the location and possession of the remaining copies of the newspaper as well as the plates used to print the copy of the poster. Plaintiff also sought to consolidate the hearing on the injunction with trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. The court conducted a hearing on March 4, 1986 where plaintiff and defendants appeared through counsel. At the hearing, the court questioned counsel regarding a possible stipulation on the accountability of the remaining copies of the paper and printing plates. Counsel, after questioning by the court, noted that a stipulation could be entered into regarding the location and securing of the newspapers and plates. Finally, the court questioned counsel on whether damages would be foregone. While there was some confusion, counsel for plaintiff indicated that damages would not be foregone. (Tr. at 19). The court then stated "Then we [will] have a limited hearing on damages. That's all. And that could be referred to a magistrate with your consent."

(Tr. at 20). Plaintiff's counsel then responded "We would agree to a reference." Defendants' counsel did not respond. The court then stated "Go ahead and prepare your papers on damages, you go before a magistrate, I have a consent to do that, and we will wash it out." (Tr. at 20).

Proposed orders were submitted by plaintiff and defendants which were intended to incorporate the substance of the hearing. The court signed the proposed order submitted by plaintiff with minor alterations. This order provided that trial on the merits was consolidated with the hearing held on March 3, 1986; that defendants were restrained from infringing on plaintiff's copyright and trademark "Ronbo"; that defendants were to deliver copies of the infringing items in their possession to plaintiff; that no material issues of fact remained; that defendants were liable for the claims in the complaint; and that the matter was referred to a Magistrate to determine damages.

### DISCUSSION

Rule 60 contains two provisions for relief from orders. Rule 60(a) is to be used to make the record "speak the truth" and is not to be used to make the record say something other than what was originally pronounced. 11 C. Wright & A. Miller, Federal Practice and Procedure (Civil) § 2854, at 149 (1973); see Dura-Wood Treating Co. v. Century Forest Industries, Inc., 694 F.2d 112, 114 (5th Cir.1982). Rule 60(b) gives the court discretion to allow relief from an order for mistake, inadvertence, surprise or excusable neglect. Both provisions are applicable to defendants' motion.

### A. CLAIMS INCLUDED IN THE MARCH 14 ORDER: RULE 60(a)

The March 14 Order provides that "defendants are hereby found jointly and severally liable to plaintiff upon the claims alleged in the complaint and the sole re-

---

1. Update obtained its rights by written contract with the creator of "Ronbo" Alfred Gescheidt. The contract dated October 10, 1985, was recorded with the Copyright Office. Update was also issued a Certificate of Copyright Registration, effective December 11, 1985.

maining issue for determination shall be damages, costs and attorney's fees which plaintiff shall recover against defendant." The hearing on March 4, 1986, however, focused on plaintiff's copyright claim. Plaintiff's other claims were not even remotely addressed in the papers submitted to the court or at the hearing. Therefore, the March 14 Order should have been limited to plaintiff's copyright claim. The order is hereby amended pursuant to Rule 60(a) to rectify this oversight. The order applies only to the copyright claim. *See Chavez v. Balesh*, 704 F.2d 774, 776 (5th Cir.1983) (judgment amended to reflect intention of court as indicated at hearing).

## B. LIABILITY ON COPYRIGHT CLAIM AND REFERRAL TO MAGISTRATE: RULE 60(b)

Defendants also seek to have the March 14 Order set aside so far as it makes a determination of defendants' liability and the referral to a magistrate to compute damages.[2] Defendants present three bases for the motion. First, defendants indicate that they never stipulated to liability at the hearing on March 4, 1986. Defendants contend that the inclusion of a provision relating to a concession of liability in the March 14 Order was the result of mistake, misunderstanding and inadvertence. Second, defendants contend that they have valid defenses to plaintiff's allegations which should be considered by the court. Finally, defendants contend that this district is an inconvenient forum and that the action should be dismissed and suit brought in Israel.

### 1. Mistake, Misunderstanding and Inadvertance

Defendants assert that the inclusion of a concession of liability in the March 14 Order was the result of mistake, misunderstanding and inadvertence. It is difficult to understand the basis for this claim.

While defendant did not expressly admit liability for copyright infringement at the hearing, the evidence presented at the hearing, which was not contradicted by defendants, was the equivalent of defendants conceding a prima facie case of copyright infringement: Ownership of a valid copyright and copying. *See Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977). Plaintiff submitted the copyright registration, *see id.* at n. 1, and it is clear that defendants copied plaintiff's poster.[3]

Once a prima facie case had been established and defense counsel offered no defense at the hearing, the only logical step was to determine damages if plaintiff sought them. While the court was initially unclear whether plaintiff would pursue damages, at the end of the hearing, after plaintiff clarified its position, the court expressly referred this matter to a Magistrate for damages. Defendants' counsel could not have been mistaken regarding this referral or the reason for doing so.

■ Thus, even though there was no express concession of liability, the combination of the evidence presented and the referral indicate that the liability and referral portion of the March 14 Order was not the result of mistake or a misunderstanding. Finally, counsel should reasonably have been aware of this. It is unclear what alternative interpretation or reason for referring this matter to a magistrate was contemplated by defendants' counsel other than what was plainly stated at the hearing.

**2.** Defendants do not have a right to a jury trial where, as in this case, plaintiff seeks injunctive relief, accounting of defendants' profits and damages sustained as a result of the infringement because the action is essentially equitable in nature. *See Boucher v. Du Boyes, Inc.,* 137 F.Supp. 639, 641 (S.D.N.Y.1955); *Arnstein v. Twentieth Century Fox Film Corp.,* 3 F.R.D. 58, 59 (S.D.N.Y.1943).

**3.** The copy of the artwork in defendants' newspaper contains a reproduction of the information contained in the border of plaintiff's original poster. This includes the copyright notice which attributes ownership of the copyright to the plaintiff as well as plaintiff's telephone number. Defendants also attributed the artwork to plaintiff in Hebrew below the artwork.

## 2. Valid Defenses

The court should examine whether defendants have a valid defense in deciding to grant relief from the March 14 Order. *See Bankers Mortgage Co. v. United States,* 423 F.2d 73, 79 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970); 11 C. Wright & A. Miller, Federal Practice and Procedure (Civil) § 2868, at 238 (1973). Defendants assert the defense of "fair use" with regard to the copyright claim and further contend that the entire action should be dismissed based on *forum non conveniens.* These claims are rejected.

### a. *Fair Use* [4]

"Fair use" has been defined as "a privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent." H. Ball, Law of Copyright and Literary Property 260 (1944) (quoted in *Harper & Row Publishers v. Nation Enterprises,* — U.S. —, 105 S.Ct. 2218, 2225, 85 L.Ed.2d 588 (1985)). Congress identified four factors, which are not intended to be exhaustive, to be used in evaluating a defense of "fair use." These factors are: 1) the purpose and character of the use; 2) the nature of the copyrighted work; 3) the substantiality of the portion used in relation to the copyrighted work as a whole; and 4) the effect on the potential market for or value of the copyrighted work. 17 U.S.C. § 107.[5]

### 1) Purpose or Character of the Use

The copyright statute itself enumerates certain purposes which are most appropriate for a finding of fair use. These include commentary and news reporting. 17 U.S.C. § 107; Nimmer, Nimmer on Copyright § 13.05[A], at 13–67. The central theme of the article is the "Reaganization" of American cinema. The article notes that many recent movies have military related pro-American, anti–Russian themes. Various movies are discussed including Rambo and Rocky IV. The "Ronbo" artwork can be seen as an pictorial representation of the central point of the article. The general purpose of defendants' use may be deemed to be commentary or news reporting. Thus, this factor weighs in favor of the "fair use" defense.

### 2) Nature of the Copyrighted Work

In weighing the nature of the copyrighted work, the court may consider whether the "work was creative, imaginative and original." *MCA, Inc. v. Wilson,* 677 F.2d 180, 182 (2d Cir.1981). Creative works are entitled to more protection than those that are informational. *Diamond v. Am-Law Publishing Corp.,* 745 F.2d 142, 148 (2d Cir.1984). The work in this case is undoubtedly creative, imaginative and original. This factor weighs against a finding of "fair use."

### 3) Substantiality of the portion used

Generally, a defendant's use of the materials will not be deemed reasonable if there has been extensive copying. *MCA, Inc. v. Wilson,* 677 F.2d at 183. In this case, defendants copied plaintiff's entire work. There are limited circumstances where "fair use" will protect the virtual total reproduction of the copyrighted work. Nimmer, *supra,* § 13.05[D], at 13–90 ("[T]here may be certain very limited situations wherein copying of even the entire work for a different functional purpose may be regarded as fair use."); *see Walt Disney Productions v. Mature Pictures Corp.,* 389 F.Supp. 1397, 1398 (S.D.N.Y.1975). *Compare Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 449–50, 104 S.Ct. 774, 792–93, 78 L.Ed.2d 574 (1984) ("the fact that entire work is reproduced ... does not have its ordinary effect of militating against a finding of fair use"

---

**4.** Whether the copying constituted "fair use" is a question of law for the court to decide. *Harper & Row Publishers v. Nation Enters.,* — U.S. —, 105 S.Ct. 2218, 2231, 85 L.Ed.2d 588 (1985).

**5.** The fact that defendants acknowledged the source of the copied material, see *supra* note 3, does not convert what is otherwise a substantial taking into a "fair use." *Henry Holt & Co. v. Liggett & Myers Tobacco Co.,* 23 F.Supp. 302 (E.D.Pa.1938).

when the Court considered "the nature of the televised copyrighted audiovisial work" and that the copying "merely enables a viewer to see such a work which he had been invited to [see] in its entirety free of charge"). Certainly, this factor weighs heavily against a finding of "fair use."

### 4) Effect on the Market

To establish this element "requires proof either that a particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work." *Sony,* 464 U.S. at 451, 104 S.Ct. at 793. This factor comes into play if defendants' copy usurps the demand for the original work. *Consumers Union of the United States, Inc. v. General Signal Corp.,* 724 F.2d 1044, 1050 (2d Cir.1983). Plaintiff, however, need not show actual present harm, nor need it show with certainty that future harm will result. *Id.*

A comparison must be made of plaintiff's original and defendants' copy in terms of the function of the works. The original poster and the copy are not the same size. However, the 8½″ × 11″ copy is likely to reduce the demand for the original poster.[6] Once a person obtains a copy of "Ronbo" as contained in defendants' publication, it is unlikely that the same person would purchase plaintiff's original poster. Defendants argue that the inclusion of the copy would stimulate demand for the original. This unsupported argument is unpersuasive and would not necessarily result in a

finding of "fair use."[7] Plaintiff is in the graphic art business and defendants are in the newspaper business. Thus the parties do not, in a strict sense, compete. *See id.* at 1051. The full page copy of "Ronbo" in defendants' newspaper and plaintiff's original, however, are in direct competition with each other as posters. Under these circumstances, defendants' actions can be seen as affecting the market for plaintiff's product. This factor indicates that the defendants' copying was not a "fair use."

### 5) Summary

■ Taking all the factors into consideration, the court finds that the defendants' copying of plaintiff's artwork was not a fair use. Thus, this is not a valid defense which would warrant a vacation of the order.

### b. *Forum Non Conveniens*

■ Defendants claim that the March 14 Order should be vacated and this action dismissed based on *forum non conveniens* ("FNC"). Defendants contend that this action should be brought in Israel.

The starting point in any discussion of FNC is Justice Jackson's opinion in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Gulf Oil* prescribes a weighing of "private" and "public" factors to determine the proper forum. A plaintiff's choice of forum will not be disturbed unless the balance is strongly in favor of a defendant. 330 U.S. at 508, 67 S.Ct. at 843; *accord Piper Aircraft Co. v.*

---

6. In comparison to the full page copy of plaintiff's artwork, the two other photos accompanying the article are 5″ × 6″ and 2½″ × 2½″. Small photos such as these are not as susceptable to a use that would compete with plaintiff's product.

7. A speculative increase in the sale of plaintiff's product would not necessarily result in fair use. *DC Comics, Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 28 (2d Cir.1982). As the Court of Appeals noted, "the owner of the copyright is in the best position to balance the prospect of increased sales against revenue from a license." *Id.* Nimmer presents another example:

> Suppose A is the copyright owner of a published novel. B produces a motion picture copied from and substantially similar to A's

> novel. The motion picture may well not adversely affect the sale of A's novel. In fact it almost certainly will have the opposite effect. It is nevertheless clear that B may not invoke the defense of fair use. B's motion picture has not prejudiced the sale of A's work in the book medium, but it has certainly prejudiced the sale of A's work in the motion picture medium. If the defendant's work adversely affects the value of any of the rights in the copyrighted work … the use is not fair even if the rights thus affected have not as yet been exercised by the plaintiff.

Nimmer, *supra,* § 13.05[B], at 13–77 to 13–79. In this case, plaintiff's ability to market an 8½″ × 11″ version of the poster is clearly prejudiced.

*Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981).

### 1. Private Factors

The relative ease of access to sources of proof will affect the balance. Defendants contend that its principal witnesses are located in Israel and that it would be a tremendous burden to require them to come to the United States to testify. This burden, however, is lessened by the "ease of modern jet travel and telecommunications." *American Special Risk Insurance Co. v. Delta America Reinsurance Co.,* 634 F.Supp. 112, 117 (S.D.N.Y.1986); *accord Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir. 1981). The significant evidentiary matter in this case will relate to the accounting for defendants' profits on the sale of the infringing copies.[8] This evidence would tend to be documentary so that the burden on witnesses would not be that great. Further, the infringement relates to a single edition of defendants' newspaper so the documents would not be voluminous. This factor does not weigh heavily in favor of dismissal.

Another private factor is the availability of compulsory process for attendance of unwilling witnesses. The witnesses in this case would likely be employees of either plaintiff or defendants. As such, they are subject to the compulsory process of this court. *See Nai-Chao v. Boeing Co.,* 555 F.Supp. 9, 18 (N.D.Calif.1982).

Defendants also argue that should this action proceed in this court, documents would need to be translated from Hebrew into English. While "this may be true, . . . it is not a hardship of sufficient magnitude to justify dismissal." *Karvelis v. Constel-lation Lines SA,* 608 F.Supp. 966, 972 (S.D. N.Y.1985).

### 2. Public Factors

Plaintiff is a corporation organized and existing under the laws of the state of New York.[9] Therefore, plaintiff has an interest in this forum. *Fiacco v. United Technologies Corp.,* 524 F.Supp. 858, 861 (S.D.N.Y. 1981). Another "public factor" is the law to be applied in the case. The copyright laws of the United States would be applied in this case. *Compare London Film Productions Ltd. v. Intercontinental Communications, Inc.,* 580 F.Supp. 47, 50 (S.D. N.Y.1984) (need to apply foreign law in copyright action is not in itself reason to dismiss action based on FNC). Thus, this factor also weighs against dismissal.

### 3. Summary

Having considered the private and public factors, the court finds that the balance does not tip significantly in defendants' favor. Therefore, the FNC defense would not warrant a vacation of the March 14 Order.

### CONCLUSION

Defendants' motion is granted in part and denied in part. The March 14, 1986 order shall be amended to relate only to the copyright claim. That portion relating to liability on the copyright claim and the referral to the Magistrate shall remain in effect.

SO ORDERED.

---

**8.** Even at trial in this case, the initial questions regarding liability would be legal rather than factual based on the defense of "fair use." See *supra* page 231. The only factual issues would relate to damages.

**9.** Defendants urge the court to consider the plaintiff to be a resident of Israel since the "proprietor" of the plaintiff corporation is an Israeli national. Chief Justice Marshall held the view that the citizenship of members of the corporation would control rather than the cor-poration itself, *Bank of the United States v. Deveaux,* 5 Cranch 61, 87, 3 L.Ed. 38 (1809), however, the Court later determined that "although a corporation was not itself a citizen for diversity purposes, its shareholders would conclusively be presumed citizens of the incorporating State." *Steelworkers v. Bouligny, Inc.,* 382 U.S. 145, 148, 86 S.Ct. 272, 274, 15 L.Ed.2d 217 (1965). Defendants have offered no support for the court to disregard this well-settled principle.