UPDATE ART, INC., Appellee,

v.

MODIIN PUBLISHING, LTD. a/k/a Modiin, Ltd. d/b/a "Maariv", "Maariv International Edition", and "Soph Shavua", and Maariv Promotions, Ltd., Appellants.

No. 720, Docket 87–7868.

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1988.

Decided March 16, 1988.

Howard M. Squadron, New York City (Neal M. Goldman, Mark H. Jackson, and Squadron, Ellenoff, Plesent & Lehrer, New York City, on the brief), for appellants.

M. Scott Vayer, New York City, for appellee.

Before TIMBERS, WINTER and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

The essential question presented by this appeal is whether this United States Court intends strictly to enforce sanctions provided for noncompliance with discovery orders. The opinion that follows is a stern warning that we do.

Appellants Modiin Publishing, Ltd. ("Modiin") and Maariv Promotions, Ltd. ("Promotions") appeal from a judgment entered October 1, 1987 in the Southern District of New York, Ruth V. Washington, *Magistrate*, imposing sanctions pursuant to Fed. R.Civ.P. 37 against them, thereby awarding Update Art, Inc. ("Update") summary judgment and $475,406 damages on its claim of copyright infringement with respect to its poster by appellants' newspaper.

On appeal, Modiin and Promotions contend that the court abused its discretion in imposing sanctions; that, even if sanctions were properly imposed, the award of damages was clearly erroneous; and that the court lacked subject matter jurisdiction over part of the award since some of the infringing newspapers remained abroad.

We hold that the court did not abuse its discretion in imposing sanctions; that the award of damages was not clearly erroneous; and that, based on the record before us, Update's claim was fully cognizable under the copyright laws.

We affirm.

### I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Appellee Update is a New York corporation engaged in the business of manufacturing and distributing graphic art designs imprinted on a variety of products, including posters, greeting cards, t-shirts and puzzles. Under a recorded license agreement dated October 10, 1985, Update owns the exclusive contract rights for worldwide publication and distribution of the art work known as "Ronbo". Update produced a "Ronbo" poster. The "Ronbo" poster is intended to mimic the character "Rambo" portrayed by Sylvester Stallone in several recent movies. "Ronbo" depicts President Reagan's head superimposed on a barechested muscular man's body wearing dog tags and carrying a machine-gun in a jungle setting.

Modiin is an Israeli corporation with annual gross revenues of $100 million. Promotions, a New York corporation, is a wholly owned subsidiary of Modiin. Modi-

in produces a number of publishing enterprises, including *Maariv*, a newspaper published in Hebrew. *Maariv* is the largest circulating daily newspaper in Israel. The weekend edition, which includes a magazine supplement, is distributed every Friday and sells approximately 250,000 copies in Israel. An international edition of the weekend edition is distributed in the United States through Promotions.

The grievance at issue arose when the February 28, 1986[1] weekend edition of *Maariv* contained an unauthorized full-page, full-color reproduction of the "Ronbo" poster in the magazine section to illustrate an article. On March 1, after discovering the infringement, Update notified Modiin and Promotions of the infringement and demanded that they cease and desist. They refused.

Update commenced the instant action on March 3 by filing a complaint against appellants and individually against certain managers, officers, employees and owners of *Maariv* alleging copyright infringement, violation of the Lanham Act, unfair competition, and violations of certain New York State statutes. Update by an order to show cause sought a temporary restraining order ("TRO"), a preliminary injunction, consolidation of the hearing on the injunction with trial on the merits pursuant to Fed.R.Civ.P. 65, and accountability as to the remaining copies of the newspaper and the printing plates used to print the copy of the poster. Subsequently, Update voluntarily discontinued the action against the individual defendants.

On March 3, the parties appeared before the court (Hon. David N. Edelstein).[2] The court declined to consider a TRO but directed that an evidentiary hearing be held on March 4 to determine whether it would issue a preliminary injunction. At the evidentiary hearing on March 4, in response to questioning by the court, counsel for both Update and appellants agreed that a stipulation could be entered into as to the location and securing of the newspapers and printing plates. Although initially there was some confusion over whether Update would forego damages, counsel for Update finally indicated that damages would be pursued. The court thereupon stated that there would be a limited hearing on damages which could be referred to a magistrate upon the parties' consent. Update's counsel replied, "We would agree to a reference." Appellants' counsel did not respond. The court then directed the parties to prepare papers on damages, and stated that the parties had consented to go before a magistrate.

The court entered an order on March 14 reflecting its oral determination. Trial on the merits was advanced and consolidated with the preliminary injunction hearing which was held on March 4. Appellants were found jointly and severally liable and were permanently enjoined from infringing the "Ronbo" copyright. Appellants were ordered to turn over the infringing negatives. The order provided that the magistrate would determine damages.

In an order entered May 12, the court amended its March 14 order, limiting liability to the copyright claim since the other claims were not addressed at the hearing. *Update Art, Inc. v. Maariv Israel Newspaper, Inc.*, 635 F.Supp. 228, 229–30 (S.D.N.Y. 1986). The court rejected appellants' defense of "fair use" and their forum non conveniens claim. *Id.* at 231–32. Although appellants did not expressly admit liability at the hearing, the court found that Update presented a prima facie case of infringement to which appellants did not respond. *Id.* at 230. The court stated at the hearing that it expressly referred the issue of damages to a magistrate, and that appellants' counsel could not have been mistaken as to why the case was being referred to a magistrate.

What should have been a rather straightforward proceeding—presentation of evidence to the magistrate on the amount of

---

1. Unless otherwise stated, all dates in this summary of the facts and prior proceedings are in the year 1986.

2. Throughout this opinion, when we refer to the "court", we mean Judge Edelstein; when we refer to the "magistrate", we mean Magistrate Washington.

damages—instead turned into a protracted dragging of feet on the part of appellants and their counsel. There were innumerable discovery conferences resulting in a series of court orders compelling appellants to respond to discovery requests. Appellants repeatedly failed to comply with the discovery orders, despite numerous extensions of time to respond which were granted. Appellants repeatedly were warned that sanctions would be imposed if they continued their noncompliance.

On March 31, 1987, these proceedings culminated with the magistrate imposing Rule 37 sanctions against appellants and their trial counsel.[3] The magistrate concluded that appellants had acted in bad faith and their production was deficient. Moreover, the magistrate concluded that neither appellants' precise profits nor their alleged deductible expenses could be determined from their limited production. Accordingly, the magistrate granted summary judgment to Update on the issue of damages with respect to its claim of copyright infringement. She accepted Update's calculation of appellants' gross income of $475,406 from the infringement based on documentary evidence.[4] She also accepted Update's calculation of its lost profits of $380,686. The magistrate awarded Update damages of $475,406 plus interest by adding to Update's lost profits of $380,686 that portion of appellants' income from the infringement that was not duplicative of Update's lost profits ($94,720). The magistrate also imposed $2,000 in sanctions against appellants' trial counsel of record for their part in the delay.

On April 28, 1987, the magistrate granted appellants' motion for reconsideration. At oral argument before the magistrate on May 14, 1987, appellants argued for the first time that Update's claim did not apply to the newspapers in Israel because American copyright laws had no extraterritorial application. In a memorandum decision and order dated September 16, 1987, the

magistrate affirmed her prior decision in all respects except she vacated the sanction against appellants' trial counsel, on a finding that counsel was not to blame for appellants' contumacious conduct. The magistrate did not make findings as to appellants' extraterritoriality claim since she erroneously concluded that Judge Edelstein had ruled on this claim.

Further facts will be referred to in our discussion of the applicable law that follows.

## II.

The Supreme Court recently has reaffirmed its determination to uphold preclusion sanctions for willful discovery violations. *Taylor v. Illinois*, 108 S.Ct. 646 (1988) (upheld preclusion of defense witness in attempted murder case from testifying when defense counsel willfully failed to identify witness in response to pretrial discovery request). The Court stated:

> " 'The need to develop all relevant facts in the adversary system is both fundamental and comprehensive.... The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.' "

*Id.* at 652 (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)). The Court continued that "[d]iscovery ... minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony." *Id.* at 653–54. The Court recognized that alternative sanctions may be adequate and appropriate in most cases, "but it is equally clear that they would be less effective than the preclusion sanction". *Id.* at 655. The Court emphasized that the sanction was particularly appropriate in *Taylor* because "it is plain that the case fits into the category of willful

---

**3.** Appellants' appellate counsel on the instant appeal were *not involved in the district court in the instant case.*

**4.** This $475,406 figure was calculated as follows:

245,604 copies shipped × $1.50 income per copy = $368,406 total sales income + $107,-000 advertising income from the weekend edition = $475,406.

misconduct in which the severest sanction is appropriate." *Id.* at 656.

Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) (per curiam); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2 Cir.1979). The harshest sanctions available are preclusion of evidence and dismissal of the action.

■ We previously have expressed our belief in the importance of appropriate sanctions as a necessary means of dealing with a recusant party. *Cine, supra*, 602 F.2d at 1063–64. As we stated then, and reaffirm now, although preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent "rather than a 'paper tiger'". *Id.* at 1064 (quoting Rosenberg, *New Philosophy of Sanctions*, in Federal Discovery Rules Sourcebook 141 (W. Treadwell ed. 1972)).

There are, of course, limitations on the court's power to impose sanctions. Rule 37(b) provides that the court may make such orders in regard to failure to comply "as are just". Although it is not for us to determine whether as an original matter we would have imposed the sanction, we will reverse only if the court abused its discretion.

## III.

■ A review of the record persuades us that the magistrate was well within the scope of her authority in imposing sanctions.

She explained in great detail the dilatory conduct leading to her imposition of sanctions. She listed the documents appellants had failed to provide as required. She did not credit appellants' assertions that many of the ordinary business documents requested did not exist. She stated that this denial came only after many discovery conferences and at the point when the magistrate felt compelled to impose sanctions. She also stated that appellants had been granted one of several extensions of time to respond when defense counsel announced he was going to Israel and expected to get the documents; yet appellants still failed to produce most of the documents. She found significant that on reargument appellants stated that documents containing distribution and sales data now were available, although appellants gave no reason for the prior delay. She also found significant that certain excuses offered by Modiin—such as the unavailability of their Israeli income tax statements and that as an Israeli corporation it did not keep the same extensive records as a similar American corporation—were not offered by Promotions. She concluded that the reason for this omission was obvious— Promotions was a New York corporation and should have maintained United States tax returns and other documents. She found that appellants' lack of good faith was illustrated by the assertion of appellants' counsel in the middle of the proceedings that he and his firm represented only Modiin and did not represent either the individual defendants or Promotions. This assertion was particularly serious since such counsel was the only one served purportedly on behalf of all parties, thereby raising an issue of personal jurisdiction over Promotions and the individual defendants. Both Judge Edelstein and the magistrate found evidence in the record indicating that counsel had represented all of the defendants. Indeed, at a hearing before Judge Edelstein on this jurisdiction issue, the judge remarked that "one thing is clear in my mind, that you misled me and you misled the magistrate, and I make that statement for the record".

The magistrate went to great lengths to give appellants ample time to respond to discovery orders. The record is replete with examples of appellants' failure to comply. Furthermore, appellants were not unfairly surprised by the sanctions imposed against them. The magistrate warned them a number of times that continued violation of discovery orders would lead to the imposition of sanctions, "including defendants being precluded from offering evidence as to damages." Moreover, the magistrate's decision was just. Update specifically requested information necessary to calculate damages, information that appellants inexcusably failed to provide. As the Third Circuit stated in another context, "The availability of such a sanction is particularly important when, as here, the very material sought to be discovered ... will normally be in the possession of a defendant and will frequently be unknown to a plaintiff." *Compagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877, 885 (3 Cir.1981), *aff'd sub nom. Insurance Co. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694 (1982).

In short, the instant case falls far short of one in which the magistrate abused her discretion. Appellants unjustifiably failed to comply with the magistrate's reasonable orders compelling discovery. The information appellants failed to provide was both appropriate and necessary to the proceedings at hand. We hold that the magistrate's decision was wholly warranted.

## IV.

◼ We turn next to appellants' claim that the magistrate's assessment of damages was clearly erroneous.

We are not impressed with appellants' belated proffer of evidence on the amount of damages. They are precluded from claiming such evidence now on appeal after sanctions have been imposed by the magistrate. The Supreme Court has recognized that a party duly sanctioned may faithfully comply with all future discovery orders if

the sanction is *reversed. National Hockey League, supra,* 427 U.S. at 643. As the Court emphasized, however, "other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *Id.* The Court concluded that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.*

Contrary to appellants' suggestion, we are not shifting the burden of proving damages to them. Rather, we hold that the magistrate made her calculation of damages on the best documentary evidence available to her. Our affirmance of this award as not clearly erroneous is based on our recognition that appellants' unjustified failure to respond to discovery orders was the *cause* of the lack of evidence necessary precisely to determine damages.[5]

## V.

This brings us to appellants' claim that the magistrate lacked subject matter jurisdiction over the infringing newspapers in Israel.

We are mindful, of course, that subject matter jurisdiction is a constitutional prerequisite to a federal court's power to act. Generally, unlike personal jurisdiction, the parties cannot waive lack of subject matter jurisdiction by consent, by conduct, or by estoppel. We also recognize that lack of subject matter jurisdiction may be raised for the first time on appeal.

We do not preclude appellants from raising a claim of lack of subject matter jurisdiction. Indeed, we have no power to do so. Rather, we hold that *in light of the record before us, Update has stated a claim fully cognizable under the copyright laws.*

---

**5.** Appellants also argue that the infringing poster comprised only one page of the newspaper and therefore there should be an apportionment of the damages. Since they conceded at oral argument that they did not raise this claim below, it is waived.

It is well established that copyright laws generally do not have extraterritorial application. There is an exception—when the type of infringement permits further reproduction abroad—such as the unauthorized manufacture of copyrighted material in the United States. *Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1443 (9 Cir.1986); *Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1100–01 (2 Cir.), *cert. denied*, 429 U.S. 848 (1976).

Appellants concede the magistrate's jurisdiction over the newspapers distributed in the United States.[6] As the applicability of American copyright laws over the Israeli newspapers depends on the occurrence of a predicate act in the United States, the geographic location of the illegal reproduction is crucial. If the illegal reproduction of the poster occurred in the United States and then was exported to Israel, the magistrate properly could include damages accruing from the Israeli newspapers. If, as appellants assert, this predicate act occurred in Israel, American copyright laws would have no application to the Israeli newspapers. Since a large portion of the damage award accrued from the Israeli newspapers, our determination on this issue affects substantially the final judgment.

Update's complaint asserts that the acts complained of occurred in whole or in part in the United States. Update asserts that nowhere in the record do appellants definitively assert that the reproduction of the poster occurred *in Israel*. Appellants deny this assertion, relying on their response to one of Update's interrogatories. In their response, appellants stated that an editor of the magazine section observed the poster "on an office wall"; he thought the poster would be a good illustration for an article and had a photographer photograph it.

Nowhere do appellants state that the reproduction occurred *in Israel*. Nor is such a sworn statement to be found anywhere in the record. Indeed, even on appeal appellants have failed to present an affidavit from anyone with personal knowledge asserting that an authorized copy of the poster was reproduced *in Israel*. We further find it significant that Update, after receiving appellants' response to the question referred to above, complained of its insufficiency and specifically requested appellants to state where the wall was located, how a copy of the poster appeared on the wall, and whether that copy was authorized. Similar to their disregard of many other discovery requests, appellants never responded.

Appellants argue that, since their response referred to their magazine section staff reproducing the poster and the magazine section is produced in Israel, we should infer that the wall was located in Israel. In light of appellants' delaying tactics and bad faith conduct throughout the proceeding, resulting in a justified preclusion sanction, we decline appellants' invitation that we draw such an inference. Appellants' assertion that the predicate act of reproducing the poster occurred in Israel is not supported by the record. The poster was sold in the United States. Promotions is located in New York. Appellants at their own risk chose not to respond to discovery orders.

Accordingly, we hold that Update's claim was fully cognizable under American copyright laws. Damages accruing from the illegal infringement in the Israeli newspapers properly were awarded to Update.

## VI.

To summarize:

We affirm the magistrate's award of summary judgment and damages. In holding as we do, we wish to emphasize the importance we place on a party's compliance with discovery orders. Such compliance is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril. If one suggests that our decision today is strong medicine, that is precisely what it is intended to be.

---

**6.** This clearly is not a case, therefore, in which the magistrate would be completely divested of subject matter jurisdiction even were we to accept appellants' argument.

We hold that the magistrate did not abuse her discretion.

Affirmed.

