**TRANSATLANTIC BULK SHIPPING LTD., Plaintiff,**

v.

**SAUDI CHARTERING S.A. and Saudi International Shipping, Defendants.**

**ASCANIUS TRANSPORTATION CORPORATION, MONROVIA, Plaintiff,**

v.

**SAUDI CHARTERING S.A., Saudi International Shipping Co., S.A., Mohammed Abdul Rahman Orri, Saudi U.S. Lines, S.A., Panama and Saudi Europe Line S.A., Defendants.**

**No. 84 Civ. 3054(PNL).**

United States District Court, S.D. New York.

Sept. 19, 1986.

Poles, Tublin, Patestides & Stratakis, New York City, for plaintiff; William J. Brady, III, of counsel.

Burlingham, Underwood & Lord, New York City, for defendants; Stephen P. Sheehan, of counsel.

LEVAL, District Judge.

This is a motion by plaintiff for sanctions arising from defendants' continued failure to produce numerous demanded documents in violation of three court orders. Plaintiff, Transatlantic Bulk Shipping, Ltd. (successor Ascanius Transportation Corp.) moves pursuant to Rule 37(b) Fed.R.Civ.P., to strike defendants' answer and motion to dismiss.[1] I find plaintiff is entitled to sanctions. Defendants have simply thumbed their noses at their obligations. They have produced only a small number of documents and have done so only after great

delay and in instances only after plaintiff had succeeded in showing the existence of the documents. Many categories of demanded documents have not been produced.

Plaintiff, Transatlantic Bulk Shipping, Ltd. (successor Ascanius Transportation Corp.), a Liberian corporation engaged in ocean carriage, is the owner of the M/V Ascanius, a Liberian flag vessel. The corporate defendants, Saudi Chartering S.A. ("SC"), Saudi International Shipping ("SIS"), Saudi U.S. Lines ("SUSL"), and Saudi Europe Line ("SEL") are Panamanian corporations which plaintiff alleges are interchangeable alter egos of defendant Mohammed Abdul Orri ("Orri"), a businessman residing in Greece who allegedly owns and controls the four corporate defendants. (Amended Complaint, ¶ 21).

The complaints[2] allege that defendants maliciously and willfully defrauded plaintiff by entering into a charter agreement with plaintiff on January 27, 1984 for the charter of plaintiff's vessel, the M/V Ascanius, knowing that they were financially unable and unwilling to pay plaintiff the required charter hire. Plaintiff now seeks to recover $700,000 pursuant to the agreement. In July 1984 plaintiff initiated arbitration in London, pursuant to a provision in the agreement, to enforce the charter agreement. Defendant SC sent a telex to the arbitration panel admitting liability. Accordingly, in August 1984 the London arbitrators awarded plaintiff $476,218 in damages against SC. To date, SC has not paid any part of this award. Plaintiff petitioned this court to confirm the arbitration award pursuant to 9 U.S.C. § 207. I dismissed the petition because of plaintiff's failure to demonstrate that this court had jurisdiction over defendant SC (See April 16, 1985 Memorandum and Order).

The procedural history of this action is one of delay and deceit on defendants' part.

---

1. Defendants have moved to dismiss for lack of personal jurisdiction, inadequate service of process and *forum non conveniens.* Plaintiff claims it is unable to respond to the motion without the demanded documents.

2. Because of the similarity between 84 Civ. 3054 and 84 Civ. 4133, the actions were consolidated for pretrial purposes.

In violation of three court orders and innumerable document demands spanning a period of over two years, defendants have failed to produce numerous documents which are, not surprisingly, vital to plaintiff's ability to effectively rebut defendants' motion to dismiss and possibly to prove its case. As to some documents, defendants' counsel asserts, without any substantiation, that the documents "do not exist." Demands by this court and plaintiff for defendants to substantiate the assertion have been ignored. Meanwhile, plaintiff has demonstrated the existence of several allegedly nonexistent documents.

On October 25, 1984 plaintiff served defendants with a notice of deposition for defendant Mohammed Orri and a demand for documents. The notice and demand were ignored. Defendants failed to produce Orri for deposition or to produce a single document. On February 8, 1985, this court ordered defendants to produce Orri and all of the demanded documents within 20 days. (Pltf's Exh. 3.) At Orri's insistence, the depositions were held in Greece 41 days later. Orri failed to answer numerous questions and defendants failed to produce most of the documents I had ordered produced. On June 19, 1985, this court issued a second order directing defendants to produce, within one week, the demanded documents (or a written response) and an affidavit by Orri answering the questions he refused to answer at the depositions. (Pltf's Exh. 5.) Although two weeks late, Orri eventually submitted the affidavit. Although some documents were produced, many were not. On July 10 I issued a third order that all demanded discovery be produced by August 1, 1985. Again the documents were not produced. Over this period a few demanded documents were produced, but only after plaintiff succeeded in demonstrating that such documents existed.

In response to the motion for sanctions, as to some categories of unproduced documents, defendants rely on the unsubstantiated assertion by their attorney that such documents do not exist. (As to other categories, no explanation whatever is offered.)

The attorney, Mr. Sheehan, offers no source or support for his assertion. He admits to having no personal knowledge of the defendants' documents. No affidavit of any person with knowledge is proffered to show non-existence of the documents. Plaintiff, furthermore, has shown facts supporting the inference that, contrary to defendants' claim, such documents do exist. These inferences are not rebutted.

The unrebutted inferences suggesting the demanded documents' existence are numerous. A few examples follow.

Request # 18

Plaintiff's Demand:

All cancelled checks, check books, check book stubs, statements, pass books, advices of credits and debits, and any other documents pertaining to any bank accounts maintained by or on behalf of defendants in any bank from Jan. 1, 1984 to Nov. 8, 1984.

Defendants' Response:

In addition to the documentation produced at the deposition of Mr. Orri, the bank statements of Saudi Lines are attached hereto as Ex. A. We are advised that *checks or passbooks are not used for these accounts.*

After defendants had claimed that "checks or passbooks are not used for [defendants'] accounts," plaintiff presented incontrovertible evidence of the existence of numerous checks including portions of defendants' financial records produced at Orri's deposition which showed lists of defendants' checks under a heading "unpresented cheques." Defendants then changed their representations admitting that the checks did exist and stating they would soon be produced. Months later a few of the listed checks were produced. The few checks that were produced are nonsequential with large gaps in the numbers. Defendants have provided no explanation for the gaps. The bank statements defendants did produce show numerous debit entries that are not explained by any checks produced or by any other form of

transfer produced. No checkbooks or stubs have been produced.

Defendants' conduct with respect to plaintiff's demand for checks has unquestionably been both obstructive and dishonest. Had plaintiff not pushed in defendants' face the incontrovertible evidence of the existence of checks, plaintiff would have received nothing but the false response that checks are not used.

### Request # 11

Plaintiff's Demand:

All documents pertaining to wire transfers or other forms of remittances or receipts to or from any bank account maintained by or on behalf of Defendants or any of them in any bank from Jan. 1, 1984 to Nov. 8, 1984.

Defendants' Response:

The *wire transfers* for Mr. Orri's account and the *account statements* of [the corporate defendants] are attached.

Defendants indeed produced wire transfers *for Orri's accounts* but no documents pertaining to wire transfers for the corporate defendants. The response did not deny their existence; it ignored the issue. Defendants' sole response to plaintiff's numerous subsequent demands for *wire transfer* documents for the four corporate defendants is that they have already produced "telexes ... confirming *transfers* [not represented to be *wire* transfers] from SUSL's agents to third parties." (Sheehan Aff't, ¶ 8.) This was an evasive nonresponse.

### Request # 20

Plaintiff's Demand:

All documents pertaining to the manner in which defendants, or any of them, obtained, acquired, purchased and/or leased its facilities, including equipment, machinery and other assets.

Defendants' Response:

To be produced on August 1, 1985. On August 1 defendants wrote "No additional documents."

What this meant, one is left to guess. It did not assert that no such documents exist. The nature of defendants' business, furthermore, raises the strong inference that they do lease or otherwise obtain facilities. Presumably documentation exists.

### Request # 23

Plaintiff's Demand:

All profit and loss and/or financial statements prepared by or on behalf of defendants from any source from the time of their formation to Oct. 15, 1984.

Defendants' Response:

On August 1, 1985 defendant sent plaintiff one profit and loss statement for defendant SUSL advising that "to date no other balance sheets or profit and loss statements have been prepared by or on behalf of defendants."

This representation was later shown to have been false. After denying the existence of such financial documents, for over two years, defendants eventually produced 1983 financial statements for one additional defendant, SC. Weeks later they produced 1984 financial statements for SC and SUSL. No explanation for the delay and earlier misrepresentations was provided. Furthermore, Orri testified at his deposition that he had used Arthur Anderson and Company as accountants and auditors for several years for all the corporate defendants (Pltf's Exh. 10). It is unlikely where a corporation had used the continued services of a firm like Arthur Anderson and Company over a period of years, that there would not exist even the most general financial records or statements.

In view of the demonstrated falsity of the earlier denial and the absence of any affidavit by a person with knowledge asserting the non-existence of further financial statements, the circumstances strongly support the inference that defendants are withholding these documents.

Although sanctions are generally inappropriate when the existence of unproduced documents is unclear, the evasive, abusive and false conduct of the defendants here warrants sanctions. Among the

circumstances that support the imposition of sanctions are: the defendants' obstructive and contumacious delay in complying with properly demanded and subsequently ordered disclosure; that for many of the unproduced documents there has been no denial of their existence; that such denials as have been made have in instances been proved false; that denials of existence are made merely by an attorney without indication of a basis for the assertion and on the face of circumstances that support the inference that the documents do exist. The defendants' failure to produce impairs plaintiff's ability to defend against defendants' assertion that it is not subject to the court's jurisdiction and possibly to demonstrate the merits of its case. Plaintiff is severely prejudiced by defendants' misconduct of its disclosure obligations. Sanctions are appropriate. Indeed, sanctions would be appropriate merely for defendants' proven dishonesty and repeated violations of three court orders.

Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions where a party fails to honor its disclosure obligations, especially after court orders. *See Roadway Express Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *United States Freight Company v. Penn. Central Transportation Co.*, 716 F.2d 954, 955 (2d Cir.1983); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir.1979). This Circuit has long recognized the importance of imposing sanctions for discovery abuse where they are warranted. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, supra at 1068; *National Hockey League v. Metropolitan Hockey Club, Inc.*, supra, 427 U.S. at 643, 96 S.Ct. at 2781. I recognize that severe sanctions should not be imposed as "mere penalties," *Cine Forty-Second Street Corp.*, supra, at 1067, or absent willful, deliberate or grossly negligent noncompliance. *See National Hockey League*, supra, at 643, 96 S.Ct. at 2781; *Cine Forty-Second Street Theatre Corp.*, supra, at 1067. *See also* 4A J. Moore, *Moore's Federal Practice* ¶ 37.03[2], at 61–62 (2d ed. 1984).

Mindful of these cautions, I find that sanctions are here appropriate. Defendants have simply sought to protect themselves from responsibility for their obligations by secrecy, deceit and disregard for court orders. When a party refuses to allow discovery of matters going to the merits of a claim or defense, sanctions precluding the delinquent party from raising those claims or defenses are appropriate. *See e.g., Life Music Inc. v. Broadcast Music, Inc.*, 41 F.R.D. 16 (S.D.N.Y.1966); *Valenstein v. Bayonne Bolt Corp.*, 6 F.R.D. 363 (S.D.N.Y.1946). Accordingly, defendants' motion to dismiss for lack of jurisdiction is stricken. I will defer for further consideration (i) whether and to what extent sanctions should be applied to the merits of the action, and (ii) whether my April 16, 1985 dismissal of plaintiff's petition to confirm the London arbitration award on grounds that this court lacked personal jurisdiction over defendant SC should be vacated.