James Kenneth **KANSAS**, Plaintiff,

v.

**EMPIRE CITY SUBWAY COMPANY (LIMITED) and the City of New York**, Defendants.

No. 06 Civ. 7601 (DAB).

United States District Court, S.D. New York.

Feb. 22, 2010.

Leonard Samuel Slavit, Ira Stuart Slavit, Levine & Slavit, Esq., New York, NY, for Plaintiff.

Matthew Scott Matera, Conway, Farrell, Curtin & Kelly, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

DEBORAH A. BATTS, District Judge.

Before the Court are two Motions: (1) Defendant Empire City Subway's ("Empire") Motion to Strike Defendant City of New York's ("NYC") Answer or Impose Additional Fed.R.Civ.P. 37 Sanctions; and (2) NYC's Motion for Summary Judgment. For the reasons below. Empire's Motion to Strike or Impose Additional Rule 37 Sanctions is DENIED and NYC's Motion for Summary Judgment is GRANTED in its entirety.

### I. FACTUAL BACKGROUND

Plaintiff James Kansas testified that on May 6, 2006, at approximately 10:30 P.M., he was injured when he fell while walking in the western cross-walk located at 8th Avenue and 42nd Street in New York City.

(Pl. Dep. pp. 14, 30 & 55.) Plaintiff testified that his toe struck a steel plate that was protruding two inches above the roadway. (*Id.* p. 32.) Plaintiff identified the steel plate that allegedly caused his fall and it bore the initials "ECS." (Pl. Dep. pp. 53–54; Soto Dep. p. 11.)

On the date of the accident, Defendant Empire was engaged in an excavation in the vicinity of 8th Avenue and 42nd Street at the request and expense of a private corporation, Verizon, Inc. (Soto Dep. pp. 12, 17 & 21–22.) Empire used metal plates in connection with this project at 8th Avenue and 42nd Street, installing and removing the plates on a daily basis to cover the excavation when Empire was not working at the site. (*Id.* pp. 23 & 66–67.)

Empire's excavation sites were subject to inspection by an agency of NYC.[1] (*Id.* pp. 56–58.) If there is an unsafe condition at a jobsite site, NYC could issue a corrective action notice request, summons and/or notice of violation. (Soto Dep. pp. 56–58.) To date, neither Empire or NYC's search of their records have found any inspection reports, requests for corrective action, written complaints or notices of violation for the Empire's jobsite at 8th Avenue and 42nd Street during the relevant time period. (*Id.* pp. 57 & 61; Aff. Nalik Zeigler, dated July 8, 2009 ¶ 4; Aff. Pearline Clark, dated July 31, 2009 ¶¶ 4–7.) In addition, searches of work permits and the "Big Apple Map"[2] have not revealed any other possible sources of the alleged unsafe condition found at the intersection.[3] (Aff. Na-

---

1. It is unclear from the record what the distinction is between the entities Highway Quality Assurance ("HQA") and the Department of Transportation ("DOT"). It is also unclear what other NYC agencies could inspect worksites. For purposes of this Motion these queries are irrelevant, as NYC has presented sufficient evidence to show that no NYC agency had prior notice of the alleged defect.

2. The Big Apple Map is a private survey of NYC's sidewalks and curbs. It is designed to

provide a means to give written notice to the City so that injured people can sue. *See* nyt-la.org

3. In its Opposition to NYC's Motion for Summary Judgment, Empire argues that NYC did not conduct an adequate search or that NYC's affidavits are not sufficient to refute Empire's allegation that NYC had notice of the alleged defect. As explained *infra,* the Court finds that Empire can point to no evidence in the record that NYC had notice of the alleged

lik Zeigler, dated July 8, 2009 ¶ 4; Aff. Pearline Clark, dated July 31, 2009 ¶¶ 4–7; *See* NYC Rule 56.1 Statement ¶¶ 8–10.)

## II. DISCUSSION

### A. Empire's Motion to Strike Answer under Rule 37

Empire argues that, under Rule 37, the Court should strike NYC's Answer, or in the alternative, impose other Rule 37 Sanctions because NYC allegedly did not: (1) provide its mandatory Rule 26(a)(1) disclosures ("Initial Disclosures") in a timely fashion; (2) produce a witness for deposition; and (3) provide any additional documentation, besides permits, during discovery.

NYC admits that it did not provide its Initial Disclosures before the discovery deadline, however, NYC argues that: (1) it was awaiting information for use in its Initial Disclosures and alerted Empire to this fact; (2) the late disclosure was not in bad faith; and (3) regardless, the late disclosure contained information already provided in discovery, so no prejudice to Empire resulted. NYC denies that it did not produce a witness or that it did not provide additional documentation.

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes a court to impose various sanctions when a party "fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2); *see also Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 112 F.R.D. 185, 189 (S.D.N.Y.1986) (holding that under Rule 37(b) "... sanctions [are] appropriate-for defendants' proven dishonesty and repeated violations of three court orders"). It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to "make a disclosure required by

Rule 26(a)," Fed.R.Civ.P. 37(a)(2)(A), or who provides an "evasive or incomplete disclosure, answer or response." Fed. R.Civ.P. 37(a)(3). *See Nike, Inc. v. Top Brand Co. Ltd.*, 216 F.R.D. 259, 267 (S.D.N.Y.2003). Sanctions are particularly appropriate when the party against whom sanctions are sought has failed to comply with a court order to provide discovery. *See United States v. Local 1804–1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir.1995). However, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 106 (2d Cir.2002) (*citing DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir. 1998)). Where the alleged breach of a discovery obligation involves the non-production of evidence, the Second Circuit has held that the district courts have broad discretion in fashioning an appropriate sanction. *Id.* at 107.

The Second Circuit has described the three purposes behind sanctions under Rule 37:(1) to ensure that a party will not benefit from its own failure to comply; (2) to provide specific deterrents and seek to obtain compliance with the particular order issued; and (3) to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault. *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988).

In this case, Empire urges the Court to impose one of the harshest sanctions available under subsection (b)(2) of Rule 37: striking NYC's Answer. *See Republic of*

---

defect and NYC has adequately presented evidence to show there is no genuine issue of

material fact on the issue of notice to NYC.

*the Philippines v. Marcos,* 888 F.2d 954, 956–57 (2d Cir.1989). To help decide whether sanctions are warranted, it is important to understand how discovery was conducted in this case.

Prior to October 10, 2008, discovery was limited to determining the proper parties to the action. (Sched. Order, Docket No. 18.) On October 10, 2008, the Court ordered that discovery must be complete by March 31, 2009. (Sched. Order, Docket No. 23.) This Order set in motion the rest of discovery in this case. Due to various delays in the progression of the case, the Court also ordered that there would be "no extensions on discovery schedule." (*Id.*) Normally, under Rule 26, Initial Disclosures should be provided 14 days after the Parties' Rule 26(f) conference. *See* Rule 26(a)(C) & 26(f)(1), but it is unclear whether the 26(f) conference was even held in this case. Regardless, Empire does not argue that NYC should have made the Initial Disclosures by a specific date as required by the Federal Rules of Civil Procedure. (*See generally* Empire's Opposition to SJ Memo of Law.) Instead Empire argues that it should have been done "on demand" and certainly by the end of discovery.

It is clear that Empire demanded Initial Disclosures from NYC at least two times prior to the end of discovery. (*See* Matthew Matera Letter to David Ansel, dated Dec. 5, 2008 & Matthew Matera Email to David Ansel, dated Mar. 5, 2009.) NYC affirms that on at least one occasion it explained its lack of disclosure due to the fact that it was still gathering information. Critically important is the fact that at no time prior to the close of discovery did Empire ever petition the Court for action against NYC for its alleged lack of timely Initial Disclosures or the adequacy of its document search. (*Id.*)

On March 30, 2009, the day before the discovery deadline, Empire's witness testified at a deposition. On that same day, Empire requested an extension in the discovery schedule.[4] (Memo Endorsed Letter from Empire, Docket No. 24.) In its letter, Empire claimed that NYC had not yet made its Initial Disclosures and had yet to produce a witness in discovery. However, these claims by Empire were clearly not the focus of the letter, nor did Empire seek relief against NYC for its alleged deficiencies in discovery. (*Id.*) Empire even indicated that NYC joined the request for an extension of discovery, behavior not consistent with a party trying to obfuscate or proceed in bad faith. (*Id.*)

On April 21, 2009, NYC served its Initial Disclosures. (Decl. Ansel David, dated June 11, 2009 ¶ 12.) NYC indicated that the only relevant documents in its possession were previously provided DOT work permits. In a letter dated April 27, 2009, Empire sought a conference to address NYC's alleged failure to: (1) produce a witness for deposition; (2) make timely Initial Disclosures; and (3) respond to Empire's discovery notice. NYC's response was that its Initial Disclosures contained information already provided and NYC tried to schedule a deposition prior to the end of discovery, but Empire and Plaintiff sought to get an extension in discovery rather than schedule NYC's deposition. The Court's memo endorsed response to Empire's April 27th letter was "[t]he Court's Order with deadlines of October 10, 2008 remains in full force and effect. There shall be no extensions." On May 26, 2009, the Court set a schedule for a Summary Judgment motion; subse-

---

4. The Court's records indicate that it received this request by fax on April 21, 2009, over three weeks after discovery was over. For purposes of this Motion, the Court will assume it received the request on the date on the letter, March 30, 2009.

quently. Empire brought the Motion to Strike.

■ It is not clear from the record, but it is likely that NYC could have been more diligent in: (1) providing to Empire its Initial Disclosures in a more timely manner; and/or (2) conducting a more exhaustive search for records in discovery.[5] However, Empire could also have been more diligent in prosecuting its cross-claims and engaging the Court over NYC's alleged deficiencies. It is, however, clear from the record that there is no evidence that NYC willfully disobeyed a court order or proceeded in bad faith such that Rule 37 sanctions need to be imposed. *See Transatlantic Bulk Shipping Ltd.,* 112 F.R.D. at 187–189. NYC gave a plausible explanation for not immediately providing its Initial Disclosures and for not producing its witness. While Empire may quibble with NYC's characterization of NYC's own conduct, if Empire truly wished to seek a resolution of this discovery dispute, it would have sought Court intervention, on the record, much in advance of the discovery deadline. Empire never made such an effort during the discovery period.

In addition, Empire has produced no evidence or explanation that it has been prejudiced by NYC's alleged conduct. NYC affirms that its Initial Disclosures contain information that was already provided to Empire. While it is understandable that Empire would want to assure that NYC did an adequate search of its records and probe an NYC witness at a deposition, its opportunity to do so was during discovery.

Due to the fact that: (1) NYC has a plausible explanation for its alleged deficiencies in discovery; (2) there is no evi-

dence of bad faith; and (3) Empire did not properly avail itself of this Court to settle a dispute during the period of discovery, the Court finds that no sanctions under Rule 37 are warranted against NYC.

### B. NYC's Motion to for Summary Judgment

#### 1. Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.,* 219 F.3d 104, 107 (2d Cir.2000). Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (*citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." *Id.* (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). While a court must always "resolv[e] ambiguities and draw ... reasonable inferences against the moving party," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), the nonmovant may not rely upon "mere speculation or conjecture as to

---

**5.** While it appears the NYC could have been more diligent in discovery, on the record, Empire and Plaintiff's behavior could be characterized the same way. Despite an explicit Court Order that discovery would not be extended, the Parties took Plaintiff's deposition only 11 days before discovery ended and Empire's deposition only 1 day before discovery ended. However, Empire now wants to hold only NYC accountable.

the true nature of the facts to overcome a motion for summary judgment." *Id.* at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986) (*quoting* Fed. R.Civ.P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. *Id.* Since this action in based on diversity, the substantive law will be New York law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

### 2. Prior Written Notice

■ Plaintiff alleges injuries resulting from a fall caused by a metal plate belonging to Empire, which protruded above the surface of the western cross walk at 42nd and 8th Avenue. NYC argues that Summary Judgment should be granted as to Plaintiff's claims, and as to Empire City's cross-claims against NYC. NYC argues that it should be dismissed from the case because, as a matter of law, no action against NYC can be maintained absent compliance with the Prior Written Notice Law. Section 7–201(c)(2) of the Administrative Code of NYC states in relevant part:

"[n]o civil action shall be maintained against [NYC] for ... injury to person[s] ... in consequence of any ... crosswalk ... being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the ... condition, was actually given to the commissioner of transportation ... and there was a failure or neglect within 15

days ... to repair or remove the defect, danger or obstruction"

N.Y.C. Administrative Code § 7–201(c). Plaintiff's alleged injuries resulted from a defect in a crosswalk and the action is within Section 7–201(c). Plaintiff has the burden of pleading and proving that NYC had prior written notice of the allegedly defective condition and Plaintiff's failure to do so requires dismissal of the Complaint. *See Katz v. City of New York*, 87 N.Y.2d 241, 243, 638 N.Y.S.2d 593, 661 N.E.2d 1374 (1995). After a search of NYC's records, and Empire's search of its own records, no NYC corrective action requests, notices of violation, inspection reports or complaints were found for the subject location during the relevant time period. (Aff. Nalik Zeigler, dated July 8, 2009 ¶ 4; Aff. Pearline Clark, dated July 31, 2009 ¶¶ 4–7.) There is also no evidence of prior notice in a search of NYC's permits or the "Big Apple Map." (Aff. Nalik Zeigler, dated July 8, 2009 ¶¶ 4–7.) Accordingly, Plaintiff has not met its burden in providing any evidence that NYC had prior written notice of the alleged defect.

Similarly, Empire has also been unable to point to any evidence to support its counterclaims against NYC. Empire argues: (1) the affidavits of Nalik Ziegler and Bruce Robinson provided by NYC should be rejected as NYC did not disclose these witnesses during discovery; (2) Affiant Ziegler's search was inadequate as it was only an intersection search; (3) NYC did not present an affidavit from the Department of Design and Control ("DDC"), which hired Tully Construction to mill and resurface 8th Avenue near 42nd Street; and (4) the affidavit from Tully Construction does not include additional documentation related to Tully Construction's work.

■ First, the affidavits of Nalik Ziegler and Bruce Robinson are properly ad-

mitted. As NYC points out, the affidavits are limited for the purpose of describing what records were searched. Otherwise, the affiants have no knowledge of the case. These previously undisclosed witnesses do not cause any prejudice or surprise such that they should be precluded. In addition, if Empire wished to probe NYC's record searching, they should have done so during discovery.

Second, Empire claims that Affiant Ziegler's "intersection search" was inadequate and a "segment search" should have been conducted. While it is unclear to the Court whether a segment search was really needed, NYC conducted the segment search Empire complained about, and it revealed what has consistently been shown in this case: NYC, nor any other entity, has any evidence that NYC had prior notice of the alleged defect. (*See generally* Aff. Pearline Clark, dated July 31, 2009.)

Finally, Empire complains that Tully Construction's affidavit was insufficient to show NYC did not have prior notice. Empire argues NYC should have provided an affidavit from the NYC entity that hired Tully Construction, the DDC, on the extent of NYC's search of DDC's records. The evidence regarding Tully Construction is, at this point in the case, irrelevant. Tully Construction was stipulated out of the case as an improper party on August 25, 2008. (*See* Docket No. 22.) For summary judgment purposes, no further review of Tully Construction's records, or NYC's records is necessary.

As NYC has presented sufficient evidence to prove it had no prior notice of the alleged defect and neither Plaintiff nor Empire has presented any evidence to refute NYC's evidence, NYC is entitled to Summary Judgment as a matter of law for the claims by Plaintiff and cross-claims by Empire. Accordingly, there is no need to reach the issue whether Empire would have to indemnify NYC.

### III. Conclusion

For the reasons above. Empire's Motion to Strike or Impose Additional Rule 37 Sanctions is DENIED and NYC's Motion for Summary Judgment is GRANTED in its entirety. NYC is HEREBY DISMISSED from the case.

Plaintiff and Empire shall submit their Proposed Voir Dire Questions and Proposed Requests to Charge to this Court, in conformity with the Court's Individual Rules, no later than April 26, 2010. Parties shall file their Joint Pre–Trial Statement ("JPTS") and respective Memoranda of Law addressing the issues raised in the JPTS, in conformity with this Court's Individual Rules, by April 26, 2010. Responses to the Memoranda of Law shall be submitted by May 26, 2010. There shall be no replies.

SO ORDERED.